**Matthew WOODWICK, Relator,**

v.

**SHAMP'S MEAT MARKET and American Mutual Insurance Company, Respondents.**

**No. C9–88–1536.**

Supreme Court of Minnesota.

Feb. 17, 1989.

Ronald Drewski, Jerry J. Lindberg, St. Cloud, for relator Matthew Woodwick.

Janet Monson, Minneapolis, for respondent Shamp's Meat Market and American Mutual Insurance Company.

SIMONETT, Justice.

We are concerned here with temporary partial disability benefits for a minor employee with a permanent disability when the statute says in such a case the compensation rate shall be the statewide average weekly wage. We reverse the Workers' Compensation Court of Appeals ruling that the minor employee is entitled to temporary partial disability benefits for only the weeks he earns less than his actual pre-injury wage.

In May 1985, employee Matthew Woodwick, age 15, began working for Shamp's Meat Market in Pine River for $3.35 an hour. On July 19, 1986, Matthew injured his left (nondominant) hand while cleaning a meat grinder. His index finger was amputated and reconstructive surgery was needed for the middle finger. Matthew returned to work in February 1987 at the same hourly rate, subject to lifting and grasping restrictions and other limitations. In October 1987 Matthew was working fewer hours than before his injury, and the employer and its insurer (American Mutual Insurance Company) filed a petition to discontinue temporary partial disability benefits. They claimed that Matthew's decreased earnings were not caused by the injury but were the result of his returning to high school full time and participating in football.

The compensation judge ruled that Matthew was entitled to continued temporary partial disability benefits. The judge found that Matthew's medical restrictions prevented him from working more hours. After the injury Matthew's hours of work per week fluctuated, however, and the difficult question, said the judge, was "whether the employee is entitled to temporary partial disability benefits during weeks when his earnings are equal to his actual earnings at the time he was injured."

Under Minn.Stat. § 176.101, subd. 2 (1986), temporary partial benefits are "66-⅔ percent of the difference between the weekly wage of the employee at the time of the injury and the wage the employee is able to earn in the employee's partially disabled condition." Under subdivision 6 of the same section, the compensation rate for temporary partial benefits for a minor employee with a permanent injury is the statewide average weekly wage.[1] If subdivision 6 governs entitlement, then it would seem the minor is entitled to temporary partial benefits whenever his post-injury earnings are less than the statewide average weekly wage, which in this case is $513 a week. Most minors have low-paying jobs, which means most employers will have to pay benefits until such time that the employee is at a wage level far in excess of what many adult workers for the same employer would be making. On the other hand, if subdivision 6 relates only to calculation of benefits, the employer need only return the employee to a job with the same pre-injury hours and wages. In such a case, the employee will be returned to a job which pays substantially less than the employee's earning capacity over the years if he had not been injured. "Either interpretation," said the compensation judge, "will be somewhat unfair to either the employee or the employer."

The compensation judge ruled that subdivision 6 governs both entitlement to and calculation of benefits for a minor employee. The compensation judge determined that the statewide average weekly wage at the time of Matthew's injury was $342. Temporary partial disability benefits are "subject to a maximum compensation equal to the statewide average weekly wage." Section 176.101, subd. 2. Hence, the statewide average weekly wage referred to in subdivision 6 is the maximum compensation rate. To produce a compensation rate of $342 requires an average weekly wage of

---

1. Minn.Stat. § 176.101, subd. 6 (1986), reads:
   If any employee entitled to the benefits of this chapter is a minor or is an apprentice of any age and sustains a personal injury arising out of and in the course of employment resulting in permanent total or a compensable permanent partial disability, for the purpose of computing the compensation to which the employee is entitled for the injury the compensation rate for temporary total, temporary partial, a permanent total disability or economic recovery compensation shall be the statewide average weekly wage.

$513 (⅔ of $513 = $342). Therefore, the compensation judge determined that the minor employee's weekly wage is assumed or imputed to be $513 at the time of his injury. The compensation judge then ruled that Matthew was entitled to temporary partial disability benefits "based on two-thirds of the difference between $513.00 and the employee's actual earnings per week with the adjustment pursuant to Minn.Stat. § 176.645." In other words, Matthew's actual pre-injury earnings, since they were less than $513 a week, would be irrelevant. Matthew's actual post-injury earnings (apparently about $67 a week) would, however, be subtracted from $513 to provide the "difference" to which the two-thirds formula applies.

The employer and insurer appealed to the Workers Compensation Court of Appeals. The WCCA agreed with the compensation judge that Matthew should have temporary partial benefits but disagreed on when he would receive them. Subdivision 6 is not an entitlement provision, said the WCCA; this subdivision relates only to computing the benefits once entitlement is otherwise established. Consequently, the WCCA reasoned that Matthew's actual pre-injury earnings were relevant on the issue of entitlement. The WCCA found that at the time of his injury the employee was working 45 hours a week, resulting in a pre-injury weekly wage of $159.10. The WCCA then held that for any week the minor employee earns less than $159.10, he is entitled to temporary partial disability benefits based on two-thirds of the difference between $513 and the employee's actual earnings per week (with adjustments). In weeks where Matthew's actual earnings exceeded $159.10, he would not be entitled to any temporary partial disability benefits.

The employee appeals to this court. The issue here is whether a minor employee is entitled to temporary partial disability benefits when his actual earnings after the injury are equal to his actual earnings before the injury.

■ We agree with the WCCA that subdivision 6 does not govern entitlement. To be entitled to temporary partial disability benefits, an employee must, among other things, establish a reduction in earning capacity caused by the injury. *See, e.g., Morehouse v. Geo. A. Hormel & Co.*, 313 N.W.2d 8, 10 (Minn.1981). In this case, the employee has shown such a reduction in his earning capacity and, therefore, has established his entitlement to temporary partial disability benefits. We disagree, however, with the WCCA in its calculation of benefits.

■ When the employee is a permanently disabled minor, the benefits are to be calculated pursuant to subdivision 6. Under subdivision 6, the legislature has decreed that a minor sustaining permanent disability receives compensation at the maximum rate even though his actual weekly wage may be well below the maximum rate. We upheld this statutory scheme against a constitutional challenge in *Bituminous Casualty Corp. v. Swanson*, 341 N.W.2d 285 (Minn.1983), stating, "Minn.Stat. § 176.101, subd. 6 furthers the purpose of compensating for lost earning capacity by ensuring that benefits received while an adult are not determined by a wage rate earned as a minor." *Id.* at 288.

A minor's actual earnings are not necessarily a true reflection of what he will earn later as an adult. Hence, in calculating the benefits for a minor with permanent disability, subdivision 6 directs that the minor's pre-injury wage should be an imputed wage, not his actual wage. As we observed in *Bituminous* and as the compensation judge noted in this case, introducing an imputed wage into the benefit equation involves a balancing of equities with a less than perfect balance. Nevertheless, the legislature has given its solution to the problem of the injured minor worker, and its solution is not without a rational basis. For example, if employers are required to pay higher benefits to injured minors they will be less inclined to hire immature youngsters to do dangerous work. *Id.* at 288. We might observe, too, that the legislature has not seen fit to change the law since *Bituminous* was decided in 1983.

Having found Matthew to be entitled to temporary partial disability benefits, the

benefits are to be calculated at two-thirds of the difference between $513 and his actual post-injury wages. This is essentially the result reached by the compensation judge. We agree with the compensation judge that for benefit calculation purposes, Matthew's actual pre-injury wage is irrelevant. Accordingly, we reinstate the compensation judge's award of benefits based on an imputed weekly wage of $513, but for reasons set out above.

The employee also argues he is entitled to "a flat rate." If we understand what he is saying, he is arguing that subdivision 6 says, simply, that the compensation rate "shall be" the statewide average weekly wage and, therefore, he should get $342 a week (adjusted for inflation) without any reduction for his actual post-injury wages. The argument is without merit. It presumes on the legislature's generosity and ignores subdivision 2.

It should be kept in mind we are not dealing here with a part-time employee. For whatever reasons, Matthew has not let his schooling interfere with working. Before his injury, even during the school term, this employee averaged 45 hours a week at $3.35 an hour. Since returning to work, although at the same hourly rate, his hours of work have been substantially reduced because of disability from his job-related injury.

Employee is allowed $800 attorney fees.

REVERSED.

KEITH, J., took no part in the consideration or decision of this case.