Craig MILLS, Petitioner,

v.

GUIDO'S, Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 89CA1897.

Colorado Court of Appeals, Div. I.

Oct. 11, 1990.

Douglas R. Phillips, Denver, for petitioner.

John Berry, Denver, for respondents Guido's and Colorado Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Paul H. Chan, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Judge SMITH.

The sole issue on review is whether the Industrial Claim Appeals Office (Panel) erred in reducing the permanent disability award of claimant Craig Mills, a minor, based upon his average weekly wage instead of the maximum rate prescribed for injured minors under § 8–47–101(5), C.R.S. (1986 Repl.Vol. 3B) (now codified as § 8–42–102(4), C.R.S.) (1990 Cum.Supp.). We set aside the Panel's order and remand.

The claimant, at the age of 18, sustained a severe injury to his left eye while employed as a cook for Guido's Restaurant. The injury left the claimant's left pupil permanently dilated, causing increased sensitivity to light, blurred vision, and headaches. Additionally, an ophthalmologist who examined the claimant opined that, as a result of the injury, claimant faces an increased likelihood of developing both glaucoma and cataracts.

At the time of claimant's injury, in May 1987, the maximum compensation rate for permanent partial disability was $84 per week, and the maximum aggregate award was $26,292. *See* § 8–51–108(1)(b), C.R.S.

(1986 Repl.Vol. 3B). However, effective July 1, 1987, the General Assembly amended § 8–51–108(1)(b), increasing the maximum compensation rate from $84 to $120 weekly, and increasing the maximum aggregate award from $26,292 to $37,560. *See* § 8–42–110(1)(b), C.R.S. (1990 Cum. Supp.).

At a subsequent benefits hearing, the parties stipulated that claimant had sustained a permanent partial disability of 4 percent as a working unit and that his average weekly wage at the time of injury was $160 per week. The ALJ computed claimant's benefits pursuant to § 8–47–101(5), which provides that permanently disabled minors shall be compensated at the "maximum rate of compensation payable under said articles *at the time of the determination of such permanency...*" (emphasis added) The ALJ found that claimant reached maximum medical improvement on November 18, 1987, and that, pursuant to the 1987 amended version of the statute, claimant was entitled to permanent partial disability benefits totalling $14,376.97, payable at the rate of $120 weekly.

On review, the Panel set aside the ALJ's award. The Panel concluded that the maximum compensation rate prescribed for minors under § 8–47–101(5) is limited to minors who are permanently and totally disabled and to the dependents of minors killed in the course of their employment. Since the claimant was not totally permanently disabled, the Panel calculated claimant's benefits according to § 8–51–108(1)(b) as it existed on May 7, 1987, the date of claimant's injury. As a result, the Panel reduced the aggregate award from $14,376.97 to $9,889.15, and reduced the weekly payments from $120 to $84.

The claimant contends that the Panel's interpretation of § 8–47–101(5) is erroneous and that, therefore, the Panel erred as a matter of law in reducing both the aggregate award and the weekly rate of benefits. We agree.

Section 8–47–101(5) provides:

"Where an employee is a minor and the disability is temporary, the average

weekly wage of such minor shall be determined by the division as in cases of disability of adults. *Where the disability of such minor is permanent or if benefits under articles 40 to 54 of this title accrue because of the death of such minor, compensation to said minor or death benefits to his dependents shall be paid at the maximum rate of compensation payable under said articles at the time of the determination of such permanency or of such death."* (emphasis added)

A "minor," for purposes of this statute, is a person under the age of twenty-one. *See* § 2–4–401(6), C.R.S. (1980 Repl.Vol. 1B); *Casa Bonita Restaurant v. Industrial Commission,* 677 P.2d 344 (Colo.App.1983).

In concluding that the additional protection afforded by § 8–47–101(5) is limited to instances of permanent total, rather than permanent partial, disability, the Panel reasoned that § 8–47–101 in its entirety is addressed to the computation of wages and the average weekly wage. The Panel noted, however, that, while death benefits and permanent total disability benefits are computed based upon a claimant's average weekly wage, an award for permanent partial disability is determined using the fixed compensation rate established under § 8–51–108(1)(b) (now § 8–42–110, C.R.S. (1990 Cum.Supp.)). The Panel thus reasoned that the only way to reconcile subsection (5) with the remainder of § 8–47–101, was to limit its application to permanent total disability and death benefit awards. We reject such a limited construction of § 8–47–101(5).

■ In construing a statute, the court must consider, *inter alia,* the legislative intent evidenced by the entire statutory scheme, *see Allee v. Contractors, Inc.,* 783 P.2d 273 (Colo.1989), the ends the statute was designed to accomplish, *see Johnson v. Industrial Commission,* 761 P.2d 1140 (Colo.1988), the legislative history of the enactment, *see Gamble v. Levitz Furniture Co.,* 759 P.2d 761 (Colo.App.1988), and the consequence that would result from alternative constructions. *See Redin v.*

*Empire Oldsmobile, Inc.,* 746 P.2d 52 (Colo.App.1987).

■ A permanent disability award, either partial or total, is designed to compensate an injured worker for loss of earning capacity. *Grover v. Industrial Commission,* 759 P.2d 705 (Colo.1988). However, if the permanently disabled worker is a minor, special considerations are inherent in determining the loss of earning capacity. It is generally recognized that young workers not only earn less than do adults, but that their permanent disabilities will extend over a longer working life than that of disabled adults. *See* 2 A. Larson, *Workmen's Compensation Law* §§ 57.33 & 60.–12(c) (1989). Therefore, the need to approximate the future earning capacity of injured minors is often recognized, both by statute and judicial decision. *See Maricopa County Neighborhood Youth Corps v. Industrial Commission,* 26 Ariz.App. 350, 548 P.2d 844 (1976); *Woodwick v. Shamp's Meat Market,* 435 N.W.2d 816 (Minn.1989); *Torres v. Trenton Times Newspaper,* 64 N.J. 458, 317 A.2d 361 (1974); *Koutsakos v. Larson,* 25 A.D.2d 590, 266 N.Y.S.2d 1014 (1966).

■ Section 8–47–101(5) addresses this problem by providing for compensation at the maximum rate where minors have been permanently disabled or killed in the scope of their employment. The Minnesota Supreme Court, interpreting a similar "flat-rate" statute, noted that the statute not only insures adequate compensation for permanently disabled minors but, in addition, serves the legitimate purpose of discouraging employers from hiring immature and inexperienced minors to do dangerous work. *See Bituminous Casualty Corp. v. Swanson,* 341 N.W.2d 285 (Minn.1983).

In view of these important public policies, we reject the Panel's conclusion that § 8–47–101(5) is limited to death benefits and awards of permanent total disability. This construction would substantially limit the application of subsection (5) and would circumvent the legislative intent of providing additional protection for minor workers.

Furthermore, our construction is consistent with the plain language of § 8–47–101(5) which contains no distinction between partial and total permanent disability. For this court to infer an *implied* exception for permanent partial disability would, in our view, be tantamount to judicial legislation and would be contrary to the long-standing principle that remedial legislation is to be liberally construed. *See Industrial Commission v. Rowe*, 162 Colo. 248, 425 P.2d 274 (1967).

We also reject the Panel's conclusion that the distinction between the methods of computing awards of permanent partial and permanent total disability is a dispositive consideration. We note that when § 8–47–101(5) was originally enacted in 1943, *see* Colo.Sess.Laws 1943, ch. 132 at 419, *both* partial and total permanent disability awards were computed based upon a claimant's average weekly wage. *See* CSA, C. 97, §§ 350, 356 and 357. Although the General Assembly subsequently established a fixed compensation rate under § 8–51–108(1)(b), *see* Colo.Sess.Laws 1973, ch. 271 at 947–948, it did not alter the special protections afforded to permanently disabled minors under § 8–47–101(5). Hence, in the absence of a clear legislative directive, we cannot construe the 1973 amendment as impliedly repealing a portion of § 8–47–101(5). *See Associated Students v. Regents of University of Colorado*, 189 Colo. 482, 543 P.2d 59 (1975).

Accordingly, the Panel's order is set aside and the cause is remanded with directions to reinstate the ALJ's order.

PIERCE and DAVIDSON, JJ., concur.