**GOLDEN ANIMAL HOSPITAL and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Lawrence D. HORTON and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 94SC323.**

Supreme Court of Colorado, En Banc.

June 26, 1995.

Colo. Compensation Ins. Authority, Paul Tochtrop, Michael J. Steiner, Denver, for petitioner.

Eley & Eley, Craig C. Eley, Denver, for respondent Lawrence D. Horton.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari in *Horton v. Golden Animal Hospital,* 879 P.2d 459 (Colo.App. 1994), to determine whether the court of appeals erred (1) in holding that the minors' statute, section 8–42–102(4), 3B C.R.S. (1994 Supp.), requires that the statute in effect on the date of the hearing on permanent disability benefits determines the rights and liabilities of the parties for those benefits; and (2) in calculating the permanent disability for the minor claimant. We reverse and remand to the court of appeals with directions to reinstate the Industrial Claim Appeal Panel's final order.

## I

While employed at Golden Animal Hospital, Lawrence D. Horton (Horton) suffered a work-related head injury in 1983 when he was eighteen years old. A shunt was implanted in the base of his skull to allow excess spinal fluid to drain away from his brain. Horton continues to be at risk of a shunt blockage, a potentially life threatening condition.

In March 1987, Horton's primary treating physician determined that Horton reached maximum medical improvement. A hearing on his permanent disability claim was held in 1992. The Administrative Law Judge (ALJ) found Horton was 5% permanently impaired and awarded him $11,968.32 to be paid at the weekly rate of $84. The ALJ based this award on the maximum permanent partial disability rate found in section 8–51–108(1)(b), 3B C.R.S. (1986), the statute in effect in 1987 when Horton reached maximum medical improvement.[1] Horton contested this order claiming under the minors' statute that his permanent disability benefits should be calculated at the compensation rate found in section 8–42–107(8)(d), 3B C.R.S. (1994 Supp.), the statute in effect at the time of the 1992 hearing. The ALJ agreed, issued a corrected order, and increased Horton's award to $32,411.35 to be paid at a weekly rate of $227.48.[2]

The Industrial Claim Appeal Panel (Panel) set aside the corrected order and reinstated the original order finding that according to its expressed effective date, section 8–42–107(8)(d) applies only to injuries occurring on or after July 1, 1991. It defined the phrase "determination of such permanency" to mean the date upon which permanency is determinable. It found that "the date of maximum medical improvement severs the claimant's right to temporary disability benefits and invokes the claimant's right to receive permanent disability benefits." It rejected the interpretation that the date of the hearing is when permanency is determined because similarly situated claimants could receive different benefits based on the date their cases were set for hearing.

The court of appeals set aside the Panel's order. *Horton v. Golden Animal Hospital,* 879 P.2d 459 (Colo.App.1994). It found that "at the time of the determination of such permanency" refers to the date on which permanent disability is adjudicated. *Id.* at 461. It based this conclusion on the fact that the phrase was a part of the original predecessor statute to section 8–42–102(4), this language has remained unchanged since its

---

**1.** The General Assembly repealed §§ 8–51–101 to –113 in 1990. Ch. 62, sec. 77, 1990 Colo.Sess. Law 576.

**2.** This figure represents fifty percent of the state average weekly wage effective July 1, 1992, in accordance with § 8–42–107(8)(d).

adoption in 1943, and that it predates any statutory reference to maximum medical improvement, which did not appear in the Workers' Compensation Act until 1991.[3] *Id.* Based on this analysis, it concluded that the General Assembly could not have intended the determination of permanency to be linked to the date of maximum medical improvement. *Id.*

The court also held that the compensation scheme for permanently disabled minors under section 8–42–102(4) was adopted as an exception to the general rule requiring benefits to be computed based on a claimant's actual earnings. *Id.* It concluded that the General Assembly intended to provide permanently disabled minors with additional protection by ensuring their benefits would be computed at the maximum rate payable and therefore could have reasonably established the maximum rate as the rate in effect on the date of adjudication. *Id.* It held that the corrected order properly computed Horton's permanent disability award.

## II

### Background

■ The Workers' Compensation Act of Colorado establishes the framework for calculating temporary and permanent disability benefits for workers injured in the course and scope of employment. § 8–40–101, 3B C.R.S. (1994 Supp.) It is a well-established rule that disability payments or death benefits are set by the law in effect at the time of injury or death. *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982). Minors, however, are afforded special protection. Because they often work part-time at a substantially lower wage than adult workers and a permanent disability will extend over a longer working life than that of disabled adults, it would be inequitable to base their permanent disability benefits upon their earnings at the time of injury. *De Jiacomo v. Industrial Claim Appeals Office*, 817 P.2d 552, 554 (Colo.App. 1991).

Section 8–47–101(5), 3B C.R.S. (1986) (now codified at § 8–42–102(4) (1994 Supp.)) (minors' statute) provides:

> Where an employee is a minor and the disability is temporary, the average weekly wage of such minor shall be determined by the division as in cases of disability of adults. Where the disability is permanent or if benefits under articles 40 to 47 of this title accrue because of the death of such minor, compensation to said minor or death benefits to said minor's dependents shall be paid at the maximum rate of compensation payable under said articles at the time of the determination of such permanency or such death.

Prior to 1990, an employee was deemed permanently disabled from the time he was so declared by the director of the division of labor. § 8–51–108(1)(a), 3B C.R.S. (1986). Permanent partial disability was determined by ascertaining in terms of percentage the extent of general permanent disability which the injury has caused, taking into consideration "the general physical condition and mental training, ability, former employment, and education of the injured employee." § 8–51–108(1)(b). The director ascertained the life expectancy of the employee and then determined the total amount the employee would receive during the balance of his expectancy at the compensation rate of eighty-four dollars per week. *Id.* The award could not exceed the aggregate sum of twenty-six thousand two hundred ninety-two dollars.[4] *Id.*

In 1990, the General Assembly repealed and reenacted the Workers' Compensation Act. Ch. 62, sec. 1, 1990 Colo.Sess.Laws 468. In 1991, it further revised the act with the passage of S.B. 91–218. Ch. 219, 1991 Colo. Sess.Laws 1291. Though the minors' statute remained unchanged, the method for calculating permanent medical impairment benefits was changed. Under the new system,

---

**3.** The phrase "maximum medical improvement" was first codified in 1991 in §§ 8–40–201(11.5) and 8–42–107(8), 3B C.R.S. (1994 Supp.).

**4.** In 1987, the General Assembly amended § 8–51–108(1)(b) and increased the maximum weekly compensation rate from $84 to $120 and the maximum aggregate award from $26,292 to $37,560. Ch. 51, sec. 7, § 8–51–108, 1987 Colo. Sess.Law 389. The effective date of these revisions was July 1, 1987.

when an injury results in permanent medical impairment not set forth in the schedule in section 8–42–107(2), the physician who has provided the employee with primary care determines when the employee has reached maximum medical improvement. Ch. 219, sec. 15, § 8–42–107(8)(b), 1991 Colo.Sess. Laws 1309. After the injured worker's maximum medical improvement date has been ascertained, the physician determines a medical impairment rating as a percentage of the whole person based on the revised third edition of the "American Medical Association Guides to the Evaluation of Permanent Impairment." § 8–42–107(8)(c), 1991 Colo.Sess. Laws 1291, 1309. Medical impairment benefits are determined by multiplying the medical impairment rating by a statutory age factor and by 400 weeks and is calculated at the temporary total disability rate specified in section 8–42–105, 3B C.R.S. (1994 Supp.). Ch. 219, sec. 15, § 8–42–107(8)(d), 1991 Colo. Sess.Laws 1310. A lump sum is paid automatically to the employee and the remaining amount of the award is paid out at the temporary total disability rate, but not less than one hundred and fifty dollars per week and not more than fifty percent of the state average weekly wage. *Id.* The General Assembly made this law effective July 1, 1991, and stated that it applies to injuries occurring on or after that date. Ch. 219, sec. 61, 1991 Colo.Sess.Laws 1291, 1342.[5]

### III

### A

Petitioners Golden Animal Hospital and the Colorado Compensation Insurance Authority argue that the court of appeals erred in applying the 1991 and 1992 statutory changes to Horton's claim for permanent disability benefits. They maintain that the level of compensation afforded under section 8–42–107(8)(d) does not apply to Horton's injuries which occurred in 1983.

■ The primary goal in determining the meaning of a statute is to ascertain and give effect to legislative intent. *Farmers*

*Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991). If possible, courts determine legislative intent by giving words their plain and ordinary meaning. *Id.*

■ The General Assembly provided in S.B. 91–218 that "[t]his act shall take effect July 1, 1991, and shall apply to injuries occurring on or after said date." Ch. 219, sec. 61, 1991 Colo.Sess.Laws 1342. The plain meaning of this section is that it applies only to injuries occurring on or after July 1, 1991. Horton's injuries occurred in 1983 and therefore section 8–42–107(8)(d) is not applicable to his claim.

■ The General Assembly did not except minors' injuries from the effective date of the 1991 revisions of the Workers' Compensation Act, nor will we imply this exception. For the court to infer an implied exception is tantamount to judicial legislation. *See Mills v. Guido's*, 800 P.2d 1370, 1373 (Colo.App. 1990) (court refused to infer an implied exception for permanent partial disabilities under the minors' statute). In *Martinez v. Regional Transportation District*, 832 P.2d 1060 (Colo.App.1992), the court of appeals refused to apply the 1991 amendments to an injury that occurred in 1986. It stated:

the General Assembly specified that the 1991 amendments to the Workers' Compensation Act were to take effect on July 1, 1991, and were to apply to cases in which a worker's injury occurred 'on or after said date.' That expressed intent of [the] General Assembly is dispositive. Thus, we cannot apply the 1991 amendments retroactively to cases such as the present one, in which a work injury occurred *prior* to July 1, 1991.

*Id.* at 1062 (citation omitted) (emphasis in the original).

■ The purpose of the minors' statute is to eliminate the disparity of benefits between adult and minor workers by providing that minors' benefits be computed at the maximum rate of compensation payable under the Workers' Compensation Act at the time permanency is determined. *De Jiacomo v. In-*

---

5. The changes made to section 8–42–107(8)(d) in 1992 do not affect our analysis. Ch. 237, sec. 1,

§ 8–42–107(8)(d), 1992 Colo.Sess.Laws 1827.

*dustrial Claim Appeals Office,* 817 P.2d 552, 554 (Colo.App.1991). The court of appeals recognized in *De Jiacomo* it would be inequitable to award benefits to a minor based upon wage earnings at the time of injury because young workers frequently work part-time and at wages substantially lower than adult workers. *Id.* Our interpretation does not interfere with the statute's purpose. Our decision does not create or increase a disparity of benefits between adults and minors. All claimants, whether adults or minors, injured on or before July 1, 1991, are unable to receive benefits calculated at the 1991 compensation rate.

We hold that the 1991 compensation rate does not apply to Horton's injuries. However, this does not answer the question of whether the date of the hearing on permanent disability benefits or the date of maximum medical improvement determines the rights and liabilities of the parties for those benefits.

### B

■ Relying on *Colorado Springs v. Timberlane Associates,* 783 P.2d 287 (Colo.1989), the court of appeals defined the word "determine" as "to decide, to adjudicate, to come to a decision, or to perform a judicial act." *Golden Animal Hospital,* 879 P.2d at 461. It concluded that the phrase "at the time of the determination of such permanency" refers to the date that permanency is adjudicated. *Id.*

The court of appeals reliance on *Timberlane* is misplaced. While we agree that "determination" means a final decision, the question then becomes a final decision made by whom. In *Timberlane,* the court was interpreting the phrase "[t]he court shall determine." Likewise in *Swift v. Smith,* 119 Colo. 126, 201 P.2d 609 (1948), cited in *Timberlane,* the court defined "determine" in the context of "the court shall determine." This context of "determine" suggests a final decision by the court, an adjudication. We disagree that the minors' statute contemplates this definition of "determined."

The minors' statute looks to the "determination of such permanency" of the disability of the claimant. Whether a disability is per-

manent requires inquiry into a claimant's physical condition. The date that the administrative docket can accommodate a hearing on the issue of permanent impairment benefits bears no relation to the claimant's physical condition. The primary care physician in charge of monitoring the claimant can better determine when the claimant's disability becomes permanent. Maximum medical improvement is the appropriate point to determine the award of permanent disability benefits under the minors' statute.

■ Horton argues that at the time of the injury, the determination of permanent disability was governed by section 8–51–108(1)(a), which stated "the injured employee shall be deemed permanently disabled from the time he is so declared by the Director." He interprets this statute as saying that permanent disability benefits begin at whatever time the Director determines. He states this would be an adjudication—a determination of permanency—by a judge and it would not necessarily be the date of maximum medical improvement.

In *Dziewior v. Michigan General Corp.,* 672 P.2d 1026 (Colo.App.1983), the court of appeals recognized the importance of the date of maximum medical improvement in determining permanency of an injury. It stated that:

> [w]hile section 8–51–108(1)(a), C.R.S.1973, does not specify the time at which the permanent partial disability is to be determined and leaves this issue to the discretion of the director of the Division of Labor, permanent disability generally cannot be determined until the authorized physicians treating a claimant for work-related injuries advise that they can do nothing further for the claimant.

*Id.* at 1030 (citations omitted). "Evaluation for permanent disability cannot precede the determination that claimant's condition has stabilized." *Id.* In *Robinson v. Campbell Development, Inc.,* 713 P.2d 403, 404 (Colo. App.1985), relying on *Dziewior,* the court of appeals found that "[g]enerally permanent disability is determined as of the time authorized physicians treating the claimant for work-related injuries advise they can do nothing further for the claimant."

The court of appeals found that the phrase "at the determination of such permanency" was a part of the original predecessor statute to section 8–42–102(4) and has remained unchanged since its adoption in 1943. *Golden Animal Hospital,* 879 P.2d at 461. It noted that because this phrase predates any statutory reference to maximum medical improvement, the General Assembly could not have meant the determination to be the date of maximum medical improvement. *Id.*

Although the phrase "maximum medical improvement" was not codified until 1991, the concept has been used as early as 1922 to determine when temporary disability ends and permanent disability begins. In *London Guarantee & Accident Co. v. Industrial Commission,* 72 Colo. 177, 180, 210 P. 70, 71 (1922), the court used the date when attending physicians told the claimant "they could do nothing further for him" as the date to award permanent disability benefits. Similarly, in *Morrison v. Clayton Co.,* 116 Colo. 501, 502, 181 P.2d 1011, 1011 (Colo.1947), the commission found that the claimant had been temporarily disabled until he reached his maximum degree of improvement and then suffered a permanent partial disability. The phrase appeared in *Dziewior v. Michigan General Corp.,* 672 P.2d 1026 (Colo.App.1983) and *Robinson v. Campbell Development, Inc.,* 713 P.2d 403 (Colo.App.1985), discussed above. Finally, in *Mills v. Guido's,* 800 P.2d 1370 (Colo.App.1990), the court of appeals reinstated the ALJ award which used the date of maximum medical improvement to determine claimant's permanent disability benefits. These cases illustrate that in 1991, the General Assembly codified the practice of using maximum medical improvement as the date to determine the compensation to be awarded to a claimant.

The ALJ's original order computed benefits at the compensation rate allowed on March 26, 1987, the date Horton's maximum medical improvement was established. She ordered compensation at the rate of $84 per week with a total award of $11,968.32 in accordance with section 8–51–108(1)(b), 3B

C.R.S. (1986). The Panel correctly determined that the original order must be reinstated.[6]

## IV

We hold that the court of appeals erred in setting aside the Panel's final order. We reverse and remand to the court of appeals with directions to reinstate the Panel's final order.

SCOTT, J., does not participate.

---

6. Because we reverse and remand to the court of appeals with directions to reinstate the Industrial Claim Appeal Panel's final order, we decline to address the issue of whether the court of appeals correctly calculated the permanent disability of the minor claimant.