942 P.2d 1358 (1997)
MONFORT TRANSPORTATION, Petitioner,
v.
The INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and James Schede, Respondents.
No. 96CA2275.
Colorado Court of Appeals, Div. II.
May 29, 1997.
Rehearing Denied July 31, 1997.
Ritsema & Lyon, P.C., Kim D. Starr, Hollyce H. Farrell, Denver, for Petitioner.
No Appearance for Respondents.
Opinion by Judge MARQUEZ.
Monfort Transportation (employer) seeks review of a final order of the Industrial Claim Appeals Office (Panel) reinstating the temporary total disability (TTD) payments payable to James Schede (claimant). We affirm.
Claimant sustained an industrial injury in November 1995. The following month, employer admitted liability for TTD benefits from November 14, 1995, and continuing. In April 1996, employer terminated TTD benefits based upon the authorized treating physician's *1359 report which stated that claimant had attained maximum medical improvement (MMI) as of March 4, 1996. Later in April, employer applied for a division sponsored independent medical examination (IME). On May 13,1996, claimant contacted the division of workers' compensation (division) to object to termination of his TTD benefits.
The division contacted employer on May 17, 1996, and directed reinstatement of TTD benefits because employer had failed to file an admission for permanent disability benefits simultaneously with the termination of TTD benefits. That same day, employer filed with the division a general admission of liability which stated that employer had applied for an IME "as Claimant received treatment in New York. If any permanency is awarded, it will be paid after rating is received...." Employer did not check the box indicating an admission of liability for permanent partial disability (PPD) benefits.
By order dated May 24, 1996, the director of the division (director) found that the admission did not include a position on, or admit liability for, permanent impairment, as required by Department of Labor & Employment Rules IV(G)(1) and IX(C)(1)(a), 7 Code Colo. Reg. 1101-3, then in effect. In order to comply with these rules, the director found, employer was required to state whether claimant had permanent impairment at the time TTD benefits were terminated. Therefore, the director ordered employer to reinstate TTD benefits "until such time as benefits may be properly terminated in accordance with Rules IV and IX, or until a hearing is held and further order is entered." The IME physician provided a permanent partial impairment rating on June 25, 1996. Employer's motion to reconsider the May 24, 1996, order was denied on June 28, 1996.
Employer, on July 8, 1996, filed a Final Admission of Liability admitting the IME's whole-person rating and claimant was paid a lump sum PPD award, discounted. Although the employer appealed the Director's orders, the Panel affirmed.
Employer contends that Rules IV(G)(1) and IX(C)(1)(a) are inconsistent with those portions of the Workers' Compensation Act (Act) governing termination of temporary disability benefits and that, thus, the Director erred in ordering employer to pay TTD benefits beyond the date of MMI. We disagree.
Section 8-42-105(1), C.R.S. (1996 Cum. Supp.) provides in pertinent part that, except where vocational rehabilitation is offered and accepted, TTD payments shall cease upon the occurrence of any of the events enumerated in § 8-42-105(3), C.R.S. (1996 Cum. Supp.). Here, vocational rehabilitation was not offered.
Section 8-42-105(3)(a), however, provides that TTD benefits "shall continue until" the employee reaches MMI. See also § 8-42-106(2)(a), C.R.S. (1996 Cum.Supp.) (temporary partial disability).
Unlike under prior versions of the statute, the determination of MMI is now primarily a medical determination. See § 8-42-107(8)(b), C.R.S. (1996 Cum.Supp.) (MMI is, in the first instance, a medical decision); Colorado AFL-CIO v. Donlon, 914 P.2d 396 (Colo.App.1995) (since determination of MMI was historically the subject of extensive litigation, the General Assembly sought to decrease such litigation by providing a medical procedure to resolve the issue). Cf. A & R Concrete Construction v. Lightner, 759 P.2d 831 (Colo.App.1988) (prior to amendments to Act, director had authority to determine MMI).
When the injured employee's date of MMI has been determined pursuant to § 8-42-107(8)(b) and there is a determination that permanent medical impairment has resulted from the injury, the authorized treating physician shall determine the medical impairment rating. Section 8-42-107(8)(c), C.R.S. (1996 Cum.Supp.).
Medical impairment benefits are then determined by the formula set forth in the statute and "shall be paid ... beginning on the date of maximum medical improvement." Section 8-42-107(8)(d), C.R.S. (1996 Cum. Supp.); see Golden Animal Hospital v. Horton, 897 P.2d 833 (Colo.1995) (reinstating Panel's finding that the date of MMI severs the claimant's right to temporary disability *1360 benefits and invokes the claimant's right to receive permanent disability benefits).
Rule IX(C)(1)(a), then in effect, provided that an insurance carrier may terminate temporary disability benefits without a hearing by filing an admission of liability form with a medical report indicating that claimant has reached MMI, "provided such admission of liability shall state a position on permanent disability benefits as provided in Rule IV, G." In turn, Rule IV(G)(1) provided that "the admission of liability form shall contain an admission for permanent disability benefits, if any" (emphasis added).
Department of Labor & Employment Rule IX(H)(2), 7 Code Colo. Reg. 1101-3, also provides that if a claimant alleges the insurance carrier has terminated TTD without following the provisions of the rule, the director may set the matter for hearing or order the insurance carrier to continue payment of TTD benefits until the rules are followed or a hearing is held and order entered.
The director may promulgate the rules and regulations governing the administration of the Act. Section 8-47-107, C.R.S. (1996 Cum.Supp.). However, an administrative rule is not the equivalent of a statute. Cornerstone Partners v. Industrial Claim Appeals Office, 830 P.2d 1148 (Colo.App. 1992). Therefore, any regulation that is contrary to or inconsistent with the regulatory authorizing statute is void. Suetrack USA v. Industrial Claim Appeals Office, 902 P.2d 854 (Colo.App.1995).
The parties have the right to have the issue of MMI, and consequently termination of TTD, heard by the ALJ. The statutory method for challenging an MMI determination is set forth in § 8-42-107(8)(b). And, if a factual issue arises as to the attainment of MMI, then the ALJ must resolve that issue. See Blue Mesa Forest v. Lopez, 928 P.2d 831 (Colo.App.1996) (when authorized treating physician gives two conflicting opinions as to MMI, and no IME was requested, ALJ may resolve factual question of when MMI was reached). Here, however, neither party requested a hearing on MMI.
Employer's argument that these rules are invalid rests on § 8-42-105(3)(a) which provides that temporary disability benefits "shall continue until," inter alia, the claimant reaches MMI. Employer reasons that Rule IV(G)(1) is invalid because it impedes its statutory right to terminate temporary disability benefits when claimant reaches MMI.
Statutes are to be construed as a whole to give a consistent, harmonious, and sensible effect to all of their parts. When a court interprets a comprehensive legislative scheme, it must give meaning to all portions thereof and construe the statutory provisions to further the legislative intent. Board of County Commissioners v. Bainbridge, Inc., 929 P.2d 691 (Colo.1996).
The problem presented here is that on the one hand, TTD benefits are to cease when the claimant reaches MMI. Sections 8-42-105(3)(a) and 8-42-106(2)(a). On the other hand, medical impairment benefits are to begin on the date of MMI. Section 8-42-107(8)(d). If a medical impairment rating is not provided on the same date that MMI is determined and the insurer can terminate payment of TTD benefits without a hearing or admission, then the claimant is left without payment of any benefits until there is a determination of medical impairment.
When Rules IX(C)(1)(a) and IV(G)(1) are read in conjunction with one another, they require insurers to admit or deny liability for permanent disability. As stated by the Panel, the purpose of these rules is to afford insurers an opportunity for termination of temporary disability benefits, if claimants will continue to receive any permanent disability benefits admittedly due, without the interruption that could accompany a pending hearing. It would be inconsistent with this purpose to conclude that employer here satisfied the requirement to "take a position on permanent disability" by essentially stating that its position will be deferred until after an impairment rating is received.
Although the right to temporary disability benefits terminates when a claimant attains MMI, the right to medical impairment benefits commences simultaneously. Accordingly, the division acts consistently with the statutes when it requires a statement denying or *1361 admitting liability for permanent disability benefits. And, when liability is admitted, the insurer is required to specify the amount of compensation to be paid. Section 8-43-203(2)(b), C.R.S. (1996 Cum.Supp.). In order to determine the amount of compensation, the insurer must first ascertain and admit the extent of disability. See § 8-42-107, C.R.S. (1996 Cum.Supp.).
Further, the rules at issue here do not contravene the statute because employer can seek an order to permit the termination of temporary disability benefits. Department of Labor & Employment Rules IX(D)(1), 7 Code Colo. Reg. 1101-03.
Since employer did not satisfy all of the requirements for termination imposed by the rules, it was obligated to continue payment of TTD benefits in accordance with its admission of liability. See § 8-43-203(2)(d), C.R.S. (1996 Cum.Supp.); Vargo v. Colorado Industrial Commission, 626 P.2d 1164 (Colo.App. 1981).
Under the law applicable to this claim, claimant's right to a determination of PPD benefits ripened once he reached MMI. See § 8-42-107(8)(c). The insurer is to receive credit against permanent disability benefits for any temporary disability benefits paid beyond the date of MMI. Department of Labor & Employment Rule IV(G)(2), 7 Colo. Code Reg. 1101-3. Consequently, it appears reasonable that, insofar as the rules permit a termination of benefits based upon the treating physician's opinion concerning MMI, the rules should also require insurers to make a good faith effort to determine the extent of the claimant's PPD prior to terminating temporary benefits, and to admit any permanent disability. This insures that there is no interruption of benefits due claimants.
It follows that there is no error in the Panel's affirmance of the director's order for reinstatement of those benefits, or the denial of employer's motion for reconsideration.
Employer's remaining arguments are not persuasive for the reasons set forth in the Panel's order.
The order of the Panel is affirmed.
CRISWELL, J., concurs.
TAUBMAN, J., dissents.
Judge TAUBMAN dissenting.
Because I disagree with the majority's conclusion that temporary total disability (TTD) payments may continue after a claimant reaches maximum medical improvement (MMI), I respectfully dissent.
Statutes are to be construed as a whole to give a consistent, harmonious, and sensible effect to all of their parts. Board of County Commissioners v. Bainbridge, Inc., 929 P.2d 691 (Colo.1996).
As acknowledged by the majority, temporary disability benefits "shall continue until," inter alia, the claimant reaches MMI. Sections 8-42-105(3)(a) and 8-42-106(2)(a), C.R.S. (1996 Cum.Supp.); see § 8-42-105(1), C.R.S. (1996 Cum.Supp.) (TTD benefits "shall cease upon the occurrence of any of the events enumerated in subsection (3) of this section"); Blue Mesa Forest v. Lopez, 928 P.2d 831 (Colo.App.1996).
The term "shall" connotes a mandatory requirement. Hillebrand Construction Co. v.Worf, 780 P.2d 24 (Colo.App.1989). Further, any regulation that is contrary to or inconsistent with the regulatory authorizing statute is void. Suetrack USA v. Industrial Claim Appeals Office, 902 P.2d 854 (Colo. App.1995).
The statutes at issue here clearly and unambiguously provide that temporary disability benefits "shall" terminate upon attainment of MMI. Thus, the director has no authority to condition this statutory right on the admission of permanent disability benefits. However, Rules IV(G)(1) and IX(C)(1)(a) could, as interpreted here, compel an admission for permanent partial disability (PPD) benefits prior to the completion of a proper investigation concerning the extent of a claimant's permanent disability.
Therefore, I would conclude that, to the extent that these rules purport to place additional restrictions on the termination of temporary disability benefits, beyond those authorized by statute, such restrictions are void. See Suetrack USA v. Industrial Claim Appeals Office, supra.
*1362 Although the majority relies upon § 8-42-107(8)(d), C.R.S. (1996 Cum.Supp.), which provides that medical impairment benefits "shall be paid ... beginning on the date of maximum medical improvement," neither that statute nor any other specifically provides that the right to PPD benefits "commences simultaneously" with the termination of the right to TTD benefits when a claimant reaches MMI. It is undisputed that when an authorized treating physician determines that no permanent medical impairment has resulted from an injury, no PPD benefits would continue or be payable after a finding of MMI, at least not until a claimant succeeded in reversing such decision after an administrative hearing.
Additionally, it appears that the parties did not follow a new statutory procedure which applies to the circumstances presented here, i.e., when an authorized treating physician not accredited under the Level II accreditation program is providing primary care out of the state of Colorado. On April 8, 1996, the date the authorized treating physician determined claimant's date of MMI, § 8-42-107(8)(b.5), C.R.S. (1996 Cum.Supp.) became effective.
Under that statute, a non-accredited out-of-state physician "shall, within twenty days after the determination of [MMI], determine whether the employee has sustained any permanent impairment," and shall conduct such tests as necessary to determine the employee's medical impairment rating. Section 8-42-107(8)(b.5)(I)(A), C.R.S. (1996 Cum. Supp.).
Additionally, the statute provides that if the employee chooses not to have the authorized treating physician perform such tests, or if the information is not transmitted in a timely manner to the insurer, the insurer shall arrange and pay for the employee to return to Colorado for examination, testing, and rating, at the expense of the insurer. If the employee refuses to return to Colorado for examination, no permanent disability benefits shall be awarded. Section 8-42-107(8)(b.5)(I)(B), C.R.S. (1996 Cum.Supp.).
The statute then provides that the insurer shall, within twenty days after receipt of the medical information from the out-of-state physician, appoint a Level II accredited physician to determine the employee's medical impairment rating. Section 8-42-107(8)(b.5)(I)(C), C.R.S. (1996 Cum.Supp.). Finally, the statute provides that if the employee or insurer disputes a medical impairment rating, including a finding that there is no medical impairment, the parties to the dispute may by mutual agreement select a physician to perform an independent medical examination (IME) to review the rating. Section 8-42-107(8)(b.5)(I)(D), C.R.S. (1996 Cum.Supp.).
Nothing in this new statutory scheme provides for the continuation of TTD or PPD benefits without interruption upon a determination of MMI.
Additionally, Department of Labor & Employment, 7 Code Colo. Reg. 1101-3, Rule IV(N)(4)(d), relied on by the Industrial Claim Appeals Office, provided at the times pertinent here that if none of the treating physicians has a Level II accreditation, the insurer shall have twenty days to request a division IME in order to ascertain the claimant's medical impairment. To the extent that rule was applicable here, it would have allowed for a period of up to twenty days for an insurer to request a division IME and such additional time as was necessary to have such IME conducted before a claimant would be entitled to any PPD benefits. Of course, if the IME concluded that the claimant did have a permanent medical impairment, PPD benefits would be paid retroactive to the date of MMI.
Therefore, it does not appear that the Panel's reliance on the above-stated rule was correct.
Accordingly, to the extent that Rules IV(G)(1) and IX(C)(1)(a) authorize the director to order an employer to pay TTD benefits beyond the date of MMI, I conclude that they contravene the statute and are, thus, void. Hence I would set aside the order of the Panel requiring the employer to pay TTD benefits beyond March 4, 1996, and would remand for further proceedings consistent with my views as expressed herein.