**McLANE WESTERN INC., Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, and Nora Sheldon, Respondents.**

No. 99CA0473.

Colorado Court of Appeals, Div. IV.

Dec. 9, 1999.

Rehearing Denied Feb. 10, 2000.

Treece, Alfrey, Musat & Bosworth, P.C., James B. Fairbanks, Alyson A. Ray, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, James E. Martin, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

J.C. Castaneda, Janie C. Castaneda, Denver, Colorado for Respondent Nora Sheldon.

Opinion by Judge ROTHENBERG.

In this workers' compensation proceeding, McLane Western, Inc. (employer), a self-insured employer, seeks review of the final order issued by the Industrial Claim Appeals Office (Panel) awarding permanent partial disability benefits based upon a whole-person impairment of 9% to Nora Sheldon (claimant). We affirm.

Claimant sustained a compensable injury on April 4, 1997, which caused her lumbar back pain. Her treating physician placed her at maximum medical improvement (MMI) on September 11, 1997, and found no ratable impairment.

Claimant then underwent a division-sponsored independent medical examination (IME). The IME physician agreed with the date of MMI, but assessed a permanent whole-person impairment rating of 9%. The IME physician based the impairment rating partially on Table 53(II)(B) of the American Medical Association Guides to the Evaluation of Permanent Impairment (3d ed. 1990) (AMA Guides), which assigns a 5% rating when the claimant has suffered an "intervertebral disc or other soft tissue lesion" in the lumbar spine which is unoperated, "with medically documented injury and *a minimum of six months of medically documented pain* and rigidity with or without muscle spasm." (emphasis added)

Employer contested the results of the IME, asserting that claimant had failed to show a minimum of six months of medically documented pain. After an evidentiary hearing, however, the Administrative Law Judge (ALJ) found that: (1) the IME physician had examined claimant more than six months after her injury; (2) the claimant had expressed complaints of ongoing back pain at that time; and (3) the IME physician had correctly included a rating under Table 53 and had properly awarded claimant benefits in accordance with the overall rating assigned by that physician.

On review, the Panel affirmed the ALJ's order.

## I.

■ Employer contends that because claimant did not suffer medically documented pain for the six months after her injury, and prior to MMI, no impairment rating could be assessed under Table 53 as a matter of law. In other words, employer maintains that the MMI date is determinative of whether a claimant has shown six months of documented pain for the purposes of applying Table 53. We disagree.

■ Section 8–40–201(11.5), C.R.S.1999, defines MMI as the date when any medically determinable physical or mental impairment caused by the injury becomes stable and no further treatment is reasonably expected to improve the condition. Thus, MMI serves as the point of demarcation between temporary and permanent disability. *See Singleton v. Kenya Corp.*, 961 P.2d 571 (Colo.App.1998).

■ Once a disability has become permanent, the resulting physical impairment must be determined in accordance with the AMA Guides. *See* § 8–42–101(3.7), C.R.S.1999. But, contrary to employer's contention, the AMA Guides do not require that the documented pain occur prior to MMI.

As the Panel observed, an injury could produce some determinable and stable medical impairment at a certain point, yet remain unratable under the AMA Guides because insufficient time had passed. The Panel further noted that to hold as employer urges would create an anomalous situation in which a group of claimants suffering the identical injury, but reaching MMI at different times, could become subject to different medical impairment ratings and different levels of disability compensation.

Nor does *Golden Animal Hospital v. Horton*, 897 P.2d 833 (Colo.1995), require a different result as employer asserts. There, the supreme court interpreted the compensation scheme for permanently disabled minors. The court concluded that the phrase, "at the time of the determination of such permanency," contained in what is now § 8–42–102(4), C.R.S.1999, referred to the date on which permanency was determinable, which was when an employee has reached MMI. The court rejected the contention that permanency was determinable on the date of the hearing.

However, the court did not consider the language in the AMA Guides which is at issue here. Thus, the general holding in *Golden Animal Hospital v. Horton, supra*, is inapposite in determining how a "medically documented injury and a minimum of six months of medically documented pain" may be shown.

We therefore reject employer's contention that, as a matter of law, permanent impairment must be determined at the time of MMI, and cannot be assessed under Table 53 unless claimant shows that six months of documented pain occurred prior to MMI.

## II.

■ The results of an IME performed by a division-selected physician are binding unless overcome by clear and convincing evidence. Sections 8–42–107(8)(b) & (c), C.R.S. 1999. Whether the IME physician has properly applied the AMA Guides in ascertaining the impairment rating and whether that rating has been overcome by clear and convincing evidence are questions of fact to be determined by the ALJ. *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411 (Colo. App.1995).

Here, employer does not challenge the ALJ's finding that claimant had complained to the IME physician of ongoing back pain. Thus, given our earlier conclusion that the IME physician correctly applied Table 53 of the AMA Guides, we perceive no basis for disturbing the ALJ's finding that employer failed to overcome the IME physician's rating.

Order affirmed.

Judge JONES concurs.

Judge BRIGGS specially concurs.

Judge BRIGGS specially concurring.

I concur in the majority's analysis and conclusion. I write separately only to note

yet another difficulty created when the new system of calculating certain permanent disability benefits was superimposed onto, but did not entirely replace, the earlier system. The difficulty this case illustrates is a potential gap between the end of eligibility for temporary benefits and the beginning of eligibility for permanent benefits.

Under the previous workers' compensation system, permanent partial disability (PPD) awards for most injuries were calculated based upon a rating of industrial disability, which measured the worker's loss of earning capacity in the labor market. The calculations took into consideration the injured worker's general physical condition and mental training, ability, former employment, and education. *Duran v. Industrial Claim Appeals Office*, 883 P.2d 477 (Colo.1994); *Colorado AFL-CIO v. Donlon*, 914 P.2d 396 (Colo.App.1995).

The system was both fair and logical. For example, a physical worker with limited abilities and no high school education might suffer a back injury identical to that suffered by a clerical worker with excellent abilities and a college degree. The resulting physical impairments might be identical. However, aside from any difference in the average weekly wage used to calculate benefits, the impact on the earning capacity of the physical worker might be substantially greater because of more limited employment alternatives with the impairment. The former system reflected that reality.

More importantly here, eligibility for temporary and permanent benefits was based on the same concept and the occurrence of a single event, maximum medical improvement (MMI). At that point, entitlement to temporary benefits ceased and permanent benefits were to be determined. *See Eastman Kodak Co. v. Industrial Commission*, 725 P.2d 107 (Colo.App.1986).

After amendments to the Workers' Compensation Act in 1991 and 1992, a new system of calculating permanent benefits was superimposed onto the existing system. The Act now requires that benefits for most permanent injuries be calculated based solely on medical impairment, pursuant to the *American Medical Association Guides to the Evaluation of Permanent Impairment* (3d ed. 1991)(AMA Guides). *See* § 8–42–107(c), C.R.S.1999; *Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333 (Colo.1996).

The calculation of permanent benefits no longer takes into consideration the individual worker's abilities, education, and experience. It therefore does not measure the actual impact on earning capacity. However, as just discussed, identical medical impairments to two workers will generally have a greater impact on the earning capacity of the worker with the more limited ability, education, and experience.

The result is that detrimental financial impact of the new system falls most greatly on those whose earning capacities are most compromised—those most in need of permanent disability benefits. In addition, under the new system even substantially similar injuries can result in substantially different awards, depending on whether the injury is rated under a remaining part of the old system or under the new system. *See Duran v. Industrial Claim Appeals Office, supra; Colorado AFL-CIO v. Donlon, supra.*

Aside from any concern with the logic or fairness of such a system, difficulties are created by superimposing it upon, but not entirely replacing, the existing system. For example, confusion can result from still basing apportionment of liability for two separate injuries on industrial disability, while basing benefits on medical impairment. *See Askew v. Industrial Claim Appeals Office, supra; Waddell v. Industrial Claim Appeals Office*, 964 P.2d 552 (Colo.App.1998) (Briggs, J. concurring).

This case illustrates a different difficulty. It arises from the relationship between the system for awarding temporary benefits and the new system of awarding permanent benefits.

Temporary benefits are still based on industrial disability, and eligibility still supposedly ceases when the worker reaches MMI, even if the worker is unable to return to employment with the employer. *See* § 8–42–105, C.R.S.1999; *see also* § 8–42–106, C.R.S. 1999 (pertaining to temporary partial disability). The new system also still uses MMI to

trigger the requirement for the treating physician to make the medical rating upon which permanent benefits, now termed medical impairment benefits, are to be based. *See* § 8–42–107(c), C.R.S.1999.

However, the treating physician is to make the calculation pursuant to the AMA Guides. *See* § 8–42–107(c). As this case illustrates, those guides may not permit the calculation of medical impairment benefits for some months after the injured worker has reached MMI.

The result is that there can be a gap in the time between MMI and the calculation of medical impairment benefits. The current statutory scheme does not address this time gap.

It is therefore unclear whether, for example, the employer must continue paying temporary benefits, even though the worker has reached MMI. If not, the injured worker will be deprived of temporary benefits during the hiatus between MMI and the determination of medical impairment benefits. For a worker who has reached MMI but, because of the injury, cannot return to the old employment or quickly find alternative employment, deprivation of any benefits during the hiatus can be devastating.

Force a square peg into a round whole and gaps will surely appear. Hopefully, the General Assembly will fill this critical gap in our current workers' compensation system.