**Diane SINGLETON, Petitioner,**

v.

**KENYA CORPORATION, the Colorado Compensation Insurance Authority, and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 97CA1291.

Colorado Court of Appeals, Div. A.

May 14, 1998.

Rehearing Denied June 25, 1998.

William E. Myrick & Associates, William E. Myrick, David Hollar, Denver, Colorado, for Petitioner.

Curt Kriksciun, Colorado Compensation Insurance Authority, Denver, Colorado, for Respondents Kenya Corporation and the Colorado Compensation Insurance Authority.

No Appearance for Respondent the Industrial Claim Appeals Office.

Opinion by Judge PIERCE*

In this workers' compensation proceeding, Diane Singleton (claimant), the widow of de-

---

\* Sitting by assignment of the Chief Justice under     provisions of the Colo. Const. art. VI, Sec. 5(3),

cedent, John Singleton, seeks review of the final order of the Industrial Claim Appeals Office (Panel) denying her claim for death benefits. We set aside the order and remand for additional proceedings.

Decedent sustained an admitted industrial injury on August 6, 1994, when he received extensive burns to his body and other injuries to his upper extremities. He died from unrelated causes prior to reaching maximum medical improvement (MMI) for his compensable injuries.

At a hearing on claimant's request for death benefits, she produced evidence that, if decedent had survived, he would have sustained a permanent and total disability with a whole-person impairment rating of 36%. The Administrative Law Judge (ALJ) denied the claim for death benefits on the basis that there had been no determination prior to decedent's death that he was entitled to permanent disability benefits.

On review, the Panel disagreed that an adjudication or determination of permanent disability was a prerequisite to an award of death benefits. However, the Panel affirmed the ALJ's denial of benefits, holding that decedent must have reached MMI prior to his death.

In this appeal, claimant contends that the Panel erred in finding that she was not entitled to receive death benefits because decedent died before reaching MMI. We agree.

Section 8–42–116(1), C.R.S.1997, governs the payment of benefits when an injured worker dies of causes unrelated to an industrial injury. It provides:

> If death occurs to an injured employee, other than as a proximate result of any injury, before disability indemnity ceases and the deceased leaves persons wholly dependent upon the deceased for support, death benefits shall be as follows:
>
> (a) Where *the injury proximately caused permanent total disability*, the death benefit shall consist of the *unpaid and unaccrued* portion of the permanent total disability benefit which the employee would have received had the employee lived until

and § 24–51–1105, C.R.S.1997.

receiving compensation at the employee's regular rate for a period of six years.

> (b) Where the injury *proximately caused permanent partial disability*, the death benefit shall consist of the *unpaid and unaccrued* portion of the permanent partial disability benefit which the employee would have received had he lived. (emphasis supplied)

In addition to the foregoing death benefits, a dependent also is entitled to "any accrued and unpaid portion" of the compensation or benefits up to the time of the employee's death. Section 8–41–503(2), C.R.S.1997.

■ The term "accrued," as used in § 8–41–503(2), means "to come into existence as an enforceable claim: vest as a right." *Estate of Huey v. J.C. Trucking, Inc.*, 837 P.2d 1218, 1221 (Colo.1992).

In *Estate of Huey*, the supreme court determined that benefits "accrued" under § 8–41–503(2) when the compensable injury occurred. Accordingly, it found that the dependents of a worker who had died of unrelated causes were entitled to recover benefits even though there had been no formal adjudication of the worker's permanent disability claim prior to his death. The court recognized that it was overruling prior decisions in which it had held that an adjudication of permanent disability during the worker's life was necessary to establish a claim on behalf of the worker's dependents. Nevertheless, it reasoned that predicating the claim for death benefits upon a formal determination would punish the dependents for "the vagaries of the workers' compensation adjudication process" and would result in a windfall to the employer. *Estate of Huey v. J.C. Trucking, Inc., supra*, 837 P.2d at 1221.

In *Nunnally v. Wal–Mart Stores*, 943 P.2d 26 (Colo.App.1996), a division of this court addressed the right of an employee's dependents to permanent disability benefits under § 8–41–503, C.R.S.1997, when the employee dies of related causes prior to reaching MMI. Relying upon the definition of "accrued" quoted in *Estate of Huey*, the *Nunnally* court determined that there were no "accrued and unpaid" benefits because perma-

nent disability benefits do not come into existence as an enforceable claim or vest as a right until MMI is reached.

Although we find these decisions instructive, we are here concerned with the claimant's right to recover "unaccrued" benefits under § 8–42–116. We, therefore, find it necessary to resort to the standard rules of statutory construction.

A court's primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. *See Lymburn v. Symbios Logic*, 952 P.2d 831 (Colo.App.1997). This requires that the statute be construed as a whole to give consistent and harmonious effect to all of its parts. *See Ward v. Ward*, 928 P.2d 739 (Colo.App.1996). When the plain language of a statute is clear and unambiguous, the statute should be applied as written. *Rios v. Mireles*, 937 P.2d 840 (Colo. App.1996).

We also must be guided by the presumption that the General Assembly intends a statute to have a just and reasonable result. Section 2–4–201(1)(c), C.R.S.1997; *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991).

In construing § 8–42–116, the Panel noted the use of the past tense in the phrase, "proximately caused," and interpreted it to mean that the industrial injury must have resulted in some form of permanent disability at the time of the employee's death or no death benefit would be payable. The Panel further observed that permanent disability cannot legally vest or exist until MMI because it is only when an employee has reached MMI that the existence or degree of medical impairment can be fully ascertained.

The Panel also rejected claimant's assertion that the term "unaccrued" necessarily refers to permanent disability benefits which have not vested. Instead, the Panel determined that the reference to "unaccrued" benefits concerned those permanent disability benefits which the deceased would have received had he lived, but which were not yet payable at the time of death.

We disagree with the Panel that the phrase "proximately caused" in both § 8–42–116(1)(a) and (b), C.R.S.1997, means that the right to benefits under that statute exists only if the deceased worker attained MMI before death.

MMI, which occurs when the employee's condition stabilizes, provides the optimal point at which the permanency of a disability can be discerned and the extent of any resulting impairment can be measured. *See Golden Animal Hospital v. Horton*, 897 P.2d 833 (Colo.1995). But, while MMI serves to demarcate when a disability becomes permanent, the employee may actually sustain the disability if injury occurs. Consequently, we conclude that the phrase, "proximately caused," simply refers to the nexus between the work-related injury and the employee's claimed disability.

The causative relationship between the injury and the disability must be established prior to MMI for an injured worker to obtain temporary disability compensation and medical benefits. *See* § 8–41–301(1)(c), C.R.S.1997 (requiring that injury or death be proximately caused by occupational accident or disease as a condition of recovery); § 8–42–101(1)(a), C.R.S.1997 (requiring that the employer provide any medical treatment that is necessitated by the disability); § 8–42–103(1)(a), C.R.S.1997 (providing for the payment of disability indemnity for work-related disabilities lasting more than three days). Thus, we find no correlation between the requirement that a causative relationship exist and that MMI be reached before benefits may be obtained under § 8–42–116.

In our view, the key to the meaning of § 8–42–116 lies in the statute's use of the word "unaccrued."

The prefix "un" means "not" or connotes "the opposite of." *Webster's Third New International Dictionary* 2481 (1968). The term "unaccrued" is specifically defined as having "not become due." *Black's Law Dictionary* 1693 (rev. 6th ed.1990). Because it is arguable that a worker's benefits accrue at the time of injury, *see Estate of Huey v. J.C. Trucking, Inc., supra*, we must acknowledge that bestowing opposite meanings on the terms "accrued" and "after unaccrued," as they have been used in §§ 8–41–503(2) and

8–42–116 respectively, would lead to an absurd result, *i.e.,* "unaccrued" would refer to those benefits due a claimant prior to a work-related injury. Hence, we must conclude that the terms incorporate qualitatively different meanings.

Construing the two statutes harmoniously, as we must, we view the use of the term "unaccrued" in § 8–42–116 as an indication that the General Assembly did not intend to restrict the benefits available under that statute to those in which the worker already had a vested right at the time of death. Regardless of whether the right to benefits vests at the time of injury or at some later point, the use of "unaccrued" in § 8–42–116 signals a broader scope of recovery than is provided for in § 8–41–503(2).

Essentially then, for purposes of § 8–42–116, we equate the term "unaccrued benefits" to "unvested benefits," and, based upon this construction, we discern no perceptible distinction between the definition of "unaccrued" urged by claimant and that adopted by the Panel. Both definitions encompass only those benefits which the injured worker may have been entitled to had his death not precluded him from establishing such entitlement. Thus, while § 8–42–116 predicates the recovery of benefits upon proof that an industrial injury caused the deceased employee to suffer a permanent disability, the statute does not foreclose such posthumous proof when the employee dies of unrelated causes before reaching MMI.

We recognize that posthumous proof of permanent disability is difficult when the employee dies before stabilization. However, our interpretation of § 8–42–116 accords with the practice recommended when death cuts off the healing period before a determination of permanent disability has been made. As stated in a leading treatise: "The proper procedure is to make the best possible medical estimate of the probable residual disability that would have remained if the employee had lived to complete his healing period." 4 *Larson's Workers' Compensation Law* § 58.45 (1997). *See also Robinson v. Newberg,* 849 S.W.2d 532 (Ky.1993); *Ralph v. Sears Roebuck & Co.,* 102 Md.App. 387, 649 A.2d 1179 (1994), *aff'd,* 340 Md. 304, 666 A.2d 1239 (1995); *Christenson v. Aslesen's Wholesale Food,* 345 N.W.2d 769 (Minn.

1984); *Wilhite v. Liberty Veneer Co.,* 47 N.C.App. 434, 267 S.E.2d 566 (1980), *rev'd in part on other grounds,* 303 N.C. 281, 278 S.E.2d 234 (1981); *but see Adzima v. UAC/Norden Division,* 177 Conn. 107, 411 A.2d 924 (1979)(dependent ineligible for death benefits because of failure to prove that the decedent reached maximum improvement before his death); *County of Spotsylvania v. Hart,* 218 Va. 565, 238 S.E.2d 813 (1977)(no benefits for loss of use of a scheduled body member were available when the decedent died before reaching MMI).

Further, *Estate of Huey, supra,* directly criticized the rationale which led the court in *Borquez v. John Burbank Trucking,* 164 Colo. 217, 433 P.2d 767 (1967), to hold that a deceased employee must have previously received an award of permanent disability benefits for the dependents of that worker to be eligible for unrelated death benefits. Consequently, we do not consider *Borquez* to be dispositive.

The order is set aside and the cause is remanded for further proceedings.

TAUBMAN and TURSI*, JJ., concur.