SUBSEQUENT INJURY FUND, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Carole S. Trudeau, and Donovan N. Trudeau, Respondents.

No. 05CA0278.

Colorado Court of Appeals, Div. IV.

Feb. 9, 2006.

John W. Suthers, Attorney General, Jill M.M. Gallet, First Assistant Attorney General, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Dawes and Harriss, P.C., Robert C. Dawes, Durango, Colorado, for Respondents Carole S. and Donovan N. Trudeau.

CARPARELLI, J.

The Subsequent Injury Fund (SIF) appeals the final order of the Industrial Claim Appeals Office (Panel) awarding death benefits to Carole S. Trudeau, widow, and Donovan N. Trudeau, great-grandson (survivors), based upon the determination that Craig S. Trudeau (decedent) died as a proximate result of an occupational disease. We affirm.

At the time of his death, decedent was disabled from pulmonary fibrosis, a disease he contracted as a result of radiation exposure while working in uranium mines. He began receiving permanent total disability benefits from the SIF in May 1993.

In 2002, he became critically ill as the result of acute pulmonary edema and coronary artery disease. After receiving a coronary angiogram, he was diagnosed as having artery lesions. The next day, he died of cardiopulmonary arrest and progressive shock.

A pulmonary specialist testified that one of the lesions was probably the immediate cause of death and that coronary artery disease was the primary cause. He estimated that decedent's lung problems contributed to fifteen percent of decedent's low cardiac output and shock that developed after his coronary occlusion. He stated that decedent's severe pulmonary disease contributed to his death by weakening his heart over time and lessening his chances of surviving a myocardial infarction. He also said the pulmonary condition accelerated or aggravated the cardiac condition that resulted in decedent's death.

The ALJ found that decedent's lung disease "contributed to his death, both by weakening his heart over time and by lessening his chances of surviving the myocardial infarction." Addressing the question of proximate cause, she stated that the injury must have done more than contribute to the death. She explained that although "proximate cause" does not require that the occupational disease be the only cause of death, it does require that the injury must have been a significant cause, in that it bore a direct causal relationship to the death, and must have been a precondition or trigger of the death. She concluded that the evidence did

not establish that decedent's lung condition was a precondition or trigger of his death and, thus, ruled that decedent's lung condition was not a proximate cause of his death.

The Panel concluded that the ALJ misapplied the law and that the ALJ's findings compelled the legal conclusion that the lung disease was "a significant causative factor" in and "a trigger or precondition" of decedent's death. Consequently, the Panel reversed the ALJ's order and remanded for findings regarding the amount of death benefits.

## I.

The SIF first contends that the award of death benefits was improper because decedent's death was caused by the nonindustrial coronary artery disease and did not proximately result from the occupational disease. We disagree.

## A.

■ The right to compensation under the Workers' Compensation Act, articles 40 to 47 of title 8, obtains in all cases in which, among other conditions, death "is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted." Section 8–41–301(1)(c), C.R.S. 2005. Under § 8–42–115, C.R.S.2005, death benefits are due when "death proximately results from the injury" or occupational disease. *See also* §§ 8–41–301, 8–41–302, C.R.S.2005.

Our task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute. We give statutory words and phrases their plain and ordinary meanings, and avoid forced, subtle, or strained constructions when the language is simple and the meaning clear. *Miller v. Indus. Claim Appeals Office,* 985 P.2d 94 (Colo.App.1999). We presume the General Assembly does not use language idly, but, rather, understands the legal import of words and phrases. *Dep't of Transp. v. Stapleton,* 97 P.3d 938, 943 (Colo. 2004).

## B.

When determining the meaning of one statutory section, we may look to the legislative scheme as a whole to give effect to the General Assembly's intent. *Dep't of Transp. v. Stapleton, supra.* Thus, we may look to the use of the meaning of "proximate result," "results from," "proximate cause," and "caused by" elsewhere in the Workers' Compensation Act.

## 1.

We first reject the SIF's contention that, in accordance with the holding in *Standard Metals Corp. v. Ball,* 172 Colo. 510, 474 P.2d 622 (1970), to award benefits, the ALJ was required to find that decedent would not have died from the heart attack "but for" his occupational disease.

In *Standard Metals,* the question was whether the claimant was entitled to additional benefits after he suffered a subsequent injury that was not work related.

The claimant had suffered an earlier compensable injury, a fractured leg bone, and had corrective surgery. About fourteen months later, when not on the job, the claimant slipped on an icy sidewalk and again fractured his leg. The Industrial Commission granted a claim for additional compensation benefits. The employer contended that the claimant's fall was an independent intervening event because it occurred when the claimant was not working for his employer, but was on a personal errand.

There, the attending physician testified that the fracture did not cause the claimant to slip and fall and that conditions in the claimant's bone and musculature unrelated to the previous fracture contributed to the new fracture. However, he also testified that, notwithstanding these other factors, the previous fracture helped produce the second fracture, which occurred in the vicinity of the first fracture and the bone graft that had been done in response to it. The record also included correspondence in which the physician stated that it was unlikely that the claimant would have experienced the second fracture had he not had the earlier one.

The court ruled that this evidence was sufficient to support the Panel's findings that the claimant's leg would not have been fractured "but for" the prior fracture and that the refracture was "a result of" and "flowed from" the original injury. *Standard Metals Corp. v. Ball, supra,* 172 Colo. at 515, 474 P.2d at 625.

However, unlike the case now before us, the court in *Standard Metals* did not apply or interpret § 8–42–115, the predecessor death from injury statute, did not address death benefits, and did not discuss the meaning of "proximate." Therefore, although it is instructive, we are not persuaded that *Standard Metals* provides an exclusive definition of "proximately results from" as used in § 8–41–115.

### 2.

We also reject the SIF's reliance on *Subsequent Injury Fund v. State Compensation Insurance Authority,* 768 P.2d 751 (Colo. App.1988) (*SCIA*), *aff'd,* 793 P.2d 580 (Colo. 1990), for the assertion that, in the field of workers' compensation, the "proximate cause" of a disability is "the necessary precondition or trigger" of that disability. The question in *SCIA* was whether the claimant was entitled to benefits when employment conditions caused asbestosis that, combined with a history of heavy smoking, caused a bronchogenic cancer.

In *SCIA,* the SIF contested its liability under the former § 8–51–112(2) (concerning last injurious exposure rule now codified with amendments as § 8–41–304(2), C.R.S.2005). The SIF argued that the claimant's cancer had not been "caused by" asbestos exposure, but by smoking. Similar to its argument here, the SIF argued that there was no disability benefit unless the disability was caused *solely* by asbestos exposure.

In *SCIA,* a division of this court rejected the SIF's contention that asbestosis had to be the sole cause of a claimant's disability. Instead, it held that one or more of the partial disabilities that contribute to a total disability may take into account nonindustrial factors or conditions. However, it ruled that a noncompensable disabling condition may not "trigger" *SIF liability* under the former

§ 8–51–106 (now codified with amendments as § 8–46–101, C.R.S.2005). From this premise, the division concluded that there is a compensable occupational disease when employment conditions act upon a pre-existing weakness so as to disable a worker. And, upon the same premise, it further concluded that if asbestosis was the "necessary precondition or trigger" *of the cancer,* then the cancer was "caused by" and "proximately caused by" asbestosis within the meaning of the statute. *SCIA, supra.*

Thus, the essential holding in *SCIA* was that, although SIF liability for a disability may not be triggered solely by a noncompensable injury itself, it may be triggered by a combination of a noncompensable injury and a compensable injury to cause disability.

Therefore, we reject the contention that *SCIA* established a rule that, in the context of workers' compensation, a death or disability cannot "proximately result from" a compensable injury or occupational disease unless the injury or disease is a "necessary precondition" or "trigger" of the death or disability. No such test appears in § 8–42–115, or in the statute that was applied in *SCIA.*

Again, although the decision in *SCIA* is instructive, we reject the SIF's contention that the division's holding in *SCIA* established the meaning of "proximately results from" as used in § 8–42–115.

### 3.

In *Johnson v. Industrial Commission,* 148 Colo. 561, 366 P.2d 864 (1961)(*Johnson II* ), decedent sustained similar compensable injuries to his chest eleven days apart. He died thirteen days later. The proof of death submitted by the treating physician stated that traumatic pneumonia was the immediate cause of death and injury to the chest wall was the remote cause of death. The autopsy report said the probable immediate cause of death was toxemia and heart failure and that death occurred as a complication of pneumonia and empyema. *See Johnson v. Indus. Comm'n,* 137 Colo. 591, 328 P.2d 384 (1958)(*Johnson I* ).

It was undisputed that the decedent in *Johnson II* died because the injury was a "confusing factor" that caused pain, which kept the decedent from coughing and clearing his bronchi and allowed the pneumonia to worsen and become fatal.

The supreme court applied the phrase "proximately caused by," as it appeared in the former § 81–13–02, a predecessor to § 8–41–301, and held that the decedent's survivors were entitled to benefits because, although the decedent's injury was not the immediate cause of death, it was the proximate cause of death.

As discussed further below, we reject the SIF's contention that, because the conclusion in *Johnson II* was that the injury was "the" proximate cause of death, an injury must be the only cause of a death. Of course, death proximately results from any injury when that injury is the only cause of death; but death may also proximately result from any injury when that injury combines with another factor to cause death.

### 4.

In *Singleton v. Kenya Corp.,* 961 P.2d 571 (Colo.App.1998), a division of this court interpreted the phrase "proximately caused," as used in §§ 8–42–116 and 8–42–117, C.R.S. 2005, which describe death benefits when death is not "a proximate result" of an injury. There, the division held that "proximately caused" "simply refers to the nexus between the work-related injury and the employee's claimed disability." *Singleton v. Kenya Corp., supra,* 961 P.2d at 574. This interpretation is particularly informative here because the *Singleton* division interpreted sections that, as here, pertain to death benefits.

With regard to the sufficiency of a nexus between an injury and a disability, a division of this court has held that an injury must be "significant" and that there must be a direct causal relationship between the injury and the resulting disability. *Seifried v. Indus. Comm'n,* 736 P.2d 1262 (Colo.App.1986).

### C.

We conclude that interpreting "proximately results from" to mean "proximately results *only* from" would result in a forced and strained construction of the statute. The statutory language is simple, its meaning is clear, and we decline to insert a word that the General Assembly did not include. Thus, as is applicable here, survivors would be entitled to benefits if a decedent's death proximately resulted from more than one condition, so long as one condition was the occupational disease.

■ For a death to proximately result from a compensable injury or occupational disease, there must be a nexus between the death and the injury or disease. However, a mere nexus in time between a compensable injury and a worker's death would not be sufficient if there was no evidence that the injury was a cause of the death. Instead, the nexus must be a significant, direct, and consequential causative factor, not a remote one. *See, e.g., Johnson II, supra; Singleton v. Kenya Corp., supra.* In addition, the significance of an injury cannot be equated to a percentage of causation. Instead, it must be determined on a factual basis in each case. *Seifried v. Indus. Comm'n, supra.*

Our conclusion is consistent with the holdings in *Standard Metals, SCIA,* and *Johnson II.* Consistent with the holding in *Standard Metals,* if death would not have occurred "but for" the compensable injury, the injury would necessarily be a significant, direct, and consequential cause of death. Similarly, consistent with the holding in *SCIA,* if a compensable injury was "a necessary precondition or trigger" of the death, it would certainly be a significant, direct, and consequential cause of the death. And, consistent with the holding in *Johnson II,* an injury that is the sole cause of death is certainly a significant, direct, and consequential cause.

### D.

■ We also conclude that whether a death proximately resulted from an injury or occupational disease is a question of fact. Only when the facts are undisputed does the

question become one of law. *See Johnson II, supra.*

Here, we conclude that the ALJ applied the wrong legal standard when she considered whether the decedent's occupational disease was a precondition or trigger of the death.

■ Although we disagree with the Panel's analysis, we agree that the ALJ's findings compel the conclusion that decedent's death proximately resulted from his lung disease. The ALJ's finding that decedent's lung disease contributed to his death by weakening his heart and by lessening his chances of surviving the heart attack compels the legal conclusion that decedent's lung disease was a significant and consequential causative factor in his death.

## II.

■ The SIF also contends that decedent's great-grandson was not a dependent at the time of decedent's death and, therefore, is not entitled to receive death benefits. We disagree.

Section 8–41–503(1), C.R.S.2005, defines dependency for purposes of awarding death benefits, stating, in pertinent part: "Dependents and the extent of their dependency shall be determined as of the date of the injury to the injured employee, and the right to death benefits shall become fixed as of said date irrespective of any subsequent change in conditions except as provided in section 8–41–501(1)(c)." *See Ward v. Ward,* 928 P.2d 739 (Colo.App.1996). The test for dependency is whether the claimant "was wholly or partially supported by the deceased employee at the time of death and for a reasonable period of time immediately prior thereto." Section 8–41–502, C.R.S.2005.

Nothing in the statute requires proof that the decedent was legally obligated to provide support to a claimant before dependency can be determined. *See Colo. Fuel & Iron Co. v. Indus. Comm'n,* 90 Colo. 330, 9 P.2d 285 (1932)(dependency under predecessor statute was to be determined as a matter of fact and was not based upon an existing legal duty to provide support). Therefore, we reject SIF's unsupported argument that the plain language of § 8–41–503(1) requires that a determination of dependency be made before the date of death. *Cf. McBride v. Indus. Comm'n,* 97 Colo. 166, 49 P.2d 386 (1935)(if legislature wanted to exclude post-injury wife from being conclusively presumed a dependent, it could have specifically so stated).

The SIF also argues that the great-grandson should not be considered a dependent because he was not designated as decedent's dependent as part of the widow's Social Security award. However, the SIF has not established that dependency under the Workers' Compensation Act is governed by the same rules applicable to determining entitlement to social security benefits. Nor has it disputed the evidence that decedent's great-grandson lived in decedent's household and that decedent's wages supported that household.

The order is affirmed.

Judge ROY and Judge METZGER * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.