Byron C. **FIELDER,** Plaintiff–Appellee,

v.

**ACADEMY RIDING STABLES,**
Defendant–Appellant.

No. 00CA2168.

Colorado Court of Appeals,
Div. IV.

Feb. 28, 2002.

Certiorari Denied June 24, 2002. *

Warren & Mundt, P.C., Robert B. Warren, Colorado Springs, Colorado, for Plaintiff–Appellee.

* Justice KOURLIS and Justice RICE would grant as to the following issues:

Did the Court of Appeals exceed its jurisdiction and err in judicially creating an exception to the exemption from liability conferred upon by the express provision of C.R.S. § 13-21-119?

Did the Court of Appeals err in holding that the injuries to Respondent were not caused by "inherent risks" of equine activity and thereby holding contrary to the specific factual findings of the District Court, which findings were supported by the record?

Retherford, Mullen, Johnson & Bruce, LLC, Anthony A. Johnson, Colorado Springs, Colorado, for Defendant–Appellant.

The Johnson Law Firm, Peter M. Johnson, Andrew R. Johnson, Denver, Colorado, for Amicus Curiae Colorado Horse Council, Inc.

Opinion by Judge RULAND.**

In this action to recover damages for personal injuries, defendant, Academy Riding Stables, appeals from the judgment entered in favor of plaintiff, Byron C. Fielder. We affirm.

The relevant facts are not in dispute. Plaintiff was one of eighteen persons who rented horses from defendant to ride horseback on a guided tour. An eleven-year-old girl was among those participating in the tour.

Before the ride began, all the participants reviewed a form that included the rules and regulations governing the guided tour. On the form, the participants also indicated their level of experience with horses. In the young girl's case, her father completed the form and indicated that she had no experience riding horseback. Defendant's employees properly matched the young girl to a horse that had been ridden on numerous occasions by inexperienced young children.

About one-third of the way through the two-hour ride, the young girl began to scream. Eventually, the screaming spooked her horse, and the horse bolted forward into plaintiff's horse. Plaintiff's horse reared, throwing plaintiff to the ground and injuring him.

Trial was to the court. Defendant argued that it was immune from liability because plaintiff's injury resulted from an inherent risk of equine activity as defined in § 13–21–119(2)(f), C.R.S.2001. In response, plaintiff asserted that defendant's negligence fit within an exception to the statutory immunity because defendant failed properly to supervise the girl when she began screaming.

Initially, the trial court found that plaintiff's injuries were a direct result of the

"inherent risks of equine activities" within the meaning of § 13–21–119(2)(f). However, it also determined that defendant's negligence fit within the exception to the statute. Specifically, the court found that while defendant had properly matched the girl to a horse initially based on her father's representations, defendant owed a continuing duty under the statute to remove the child from the horse if circumstances changed and the match between horse and rider was no longer suitable.

On appeal, defendant contends that the trial court erred in its interpretation of the statute. However, we reach the same conclusion as did the trial court, but for somewhat different reasons.

■ Interpretation of a statute presents a question of law. Therefore, the trial court's determination is subject to independent review by the appellate court. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). The primary goal in determining the meaning of a statute is to ascertain and give effect to the legislative intent by construing the words of the statute according to their plain and ordinary meaning. *Golden Animal Hosp. v. Horton,* 897 P.2d 833 (Colo.1995).

■■ Here, because the state and its citizens derive economic and personal benefits from "equine activities," the General Assembly adopted § 13–21–119(1), C.R.S.2001, to grant immunity to persons and entities involved in "equine activities" from liability for injuries that result from certain "inherent risks of equine activities." Section 13–21–119(3), C.R.S.2001; *see also Culver v. Samuels,* 37 P.3d 535 (Colo.App.2001). However, the immunity statute is inconsistent with the former duties of an equine professional under the common law. *Shandy v. Sombrero Ranches, Inc.,* 525 P.2d 487 (Colo.App. 1974)(not selected for official publication)(discussing duties of a wrangler when a rider is unable to control a horse). Hence, we must apply a strict construction to that grant of

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2001.

immunity. *See Walton v. State*, 968 P.2d 636 (Colo.1998).

Included within the inherent risks of equine activities are "[t]he unpredictability of the animal's reaction to ... sounds," "[c]ollisions with other animals," and "[t]he potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal." Section 13–21–119(2)(f)(II), (IV), (V), C.R.S.2001.

There are, however, statutory exceptions to the general grant of immunity. One such exception applies if the equine professional fails to make reasonable efforts to determine the ability of the participant to safely manage the particular animal based on the participant's representations of his or her ability. Section 13–21–119(4)(b)(I)(B), C.R.S.2001.

■ In this case, the trial court found with record support that defendant fulfilled its obligation under the statute initially by matching the young girl with a horse that had been used successfully with inexperienced riders. However, the court also found:

It's uncontradicted that by immediately or shortly after the ride started, [the young girl] began screaming intermittently, if not constantly in terror. And that's important to the ruling because she was not screaming for any one of a number of other reasons which might not have alerted a reasonable and prudent person to the conclusion that she should be taken off that horse.

*Notwithstanding the fact that there were two or three wranglers on the ride, none of them recognized what a reasonable and prudent person in the same or similar circumstances should have,* and that is that [the young girl] was terrified of riding any horse, the entire experience of riding a horse. She was allowed to continue riding to a point where her screaming spooked [the horse] ... causing [the horse] to bolt into the rear of the Plaintiff's horse causing that horse to rear and to throw him. *But for the negligence of the Defendant's agents on the ride,* negligence which was within the scope of that continuing duty which is set out by the statute, *the Plain-*

*tiff's injury would not have been incurred.* (emphasis supplied)

Even if we assume, as defendant argues, that the trial court erred in imposing a continuing duty after the rider and horse were properly matched, we must still determine whether defendant is granted immunity under the statute for the negligent failure of the wranglers to remove the child from the horse despite an obvious danger.

After defining the inherent risk of equine activity, the statute, in § 13–21–119(3) provides in relevant part:

Except as provided in subsection (4) of this section, ... an equine professional ... shall not be liable for an injury to ... a participant resulting from the *inherent risks of equine activities* .... (emphasis supplied)

■ Thus, the immunity granted in the statute is limited to injuries resulting from the inherent risks of equine activities. *See B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 138 (Colo.1998)(noting that liability under the Act is not limited if injury to the participant results from "non-inherent" or other risks). Here, the accident was not directly caused by such an inherent risk. Instead, the direct cause was the negligence of the wranglers in failing to remove the child from the horse before it bolted.

We find further support for this interpretation based upon the analysis in *Graven v. Vail Assocs., Inc.*, 909 P.2d 514 (Colo.1995), and apply it here.

In *Graven,* the plaintiff was injured in an accident on the ski slope. The court was required to interpret certain 1990 amendments to the Ski Safety Act adopting exceptions from liability of ski operators for the "inherent dangers and risks of skiing." "Inherent dangers and risks of skiing" are defined in the Act as including "those dangers or conditions which are an integral part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change[; and] surface or subsurface conditions." Section 33–44–103(3.5), C.R.S. 2001.

In addressing this section of the statute, the court stated, among other things:

[W]hen interpreting a statute, we must read and interpret the language "so as to give consistent, harmonious and sensible effect to *all of its parts.*" The dangers and risks detailed in section 33–44–103(3.5) are intended to describe those "which are an integral part of the sport of skiing." The detailed listing of dangers and risks must be read with that intent and *limitation* in mind.

*Graven v. Vail Assocs., Inc., supra,* 909 P.2d at 519 (second emphasis supplied; citation omitted).

Here, as discussed, there is no provision granting immunity for the negligence of defendant's wranglers in failing to protect the participants from an obvious danger of which they have ample notice.

Accordingly, applying the analysis in *Graven,* we read "inherent risks of equine activity" as a limitation on the types of activity for which immunity is granted. We conclude that the negligence of the wranglers here is not among such "inherent risks." We further conclude that this interpretation represents a strict construction of the grant of immunity, as is required.

As a result, we determine that the trial court reached the correct result.

The judgment is affirmed.

Judge DAVIDSON and Judge DAILEY concur.