**Michele WANEKA, Plaintiff–Appellant,**

v.

**Freeman CLYNCKE and Danny Clyncke, Defendants–Appellees.**

**No. 04CA0811.**

Colorado Court of Appeals, Div. I.

Dec. 15, 2005.

Certiorari Granted May 30, 2006.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Peter William Thomas, PLLC, Peter W. Thomas, Jr., Aspen, Colorado, for Plaintiff–Appellant.

Lambdin & Chaney, LLP, L. Kathleen Chaney, John W. Fairless, Denver, Colorado, for Defendants–Appellees.

Opinion by: Judge WEBB.

In this action involving a horseback riding accident, plaintiff, Michele Waneka, appeals the judgment entered on a jury verdict in favor of defendants, Danny and Freeman Clyncke. We reverse and remand for a new trial.

The background facts are undisputed. Defendants own a riding stable, teach riding lessons, and run a cattle ranch. Plaintiff sustained a brain injury when she fell from a horse named Badger while assisting defendants in a horse roundup on their ranch. Defendants had invited plaintiff on prior cattle roundups. The morning of the accident, she rode Badger during a cattle roundup without incident. Defendants then told plaintiff they were going to round up horses that afternoon. Following lunch, plaintiff joined them on the horse roundup.

Plaintiff testified that when she saw the horses, Badger took off running. She remembered being frightened and trying to direct Badger away from the horses, but recalls nothing after that.

Danny Clyncke testified that plaintiff was behind him, and then she was gone. He next saw her moving at "a trot that was just starting to smooth out to a lope" and that she "didn't appear to be alarmed or panic[ked]." No one saw plaintiff fall from Badger. She was later found lying on the ground unconscious.

As relevant here, plaintiff brought suit under the Colorado Equine Activities Statute (EAS), § 13–21–119, C.R.S.2005. She alleged that she is a beginning rider with minimal equestrian skills, that she was provided a specially trained horse inappropriate for her skill level, and that a horse roundup was an inappropriate and unsafe activity for a rider of her limited experience.

## I.

Plaintiff first asserts that the trial court misconstrued the EAS by instructing the jury, over her objection, that the sponsor

of an equine event would be liable only if a claimant proves that the sponsor failed to make reasonable efforts to determine *both* the participant's ability to engage in an activity *and* the participant's ability to manage an animal. We agree.

■ The trial court determines the form and style in which instructions will be given to the jury within its sound discretion. *Williams v. Chrysler Ins. Co.*, 928 P.2d 1375, 1377 (Colo.App.1996).

■ A court commits error in giving an incorrect instruction, unless the error is cured by the instructions as a whole. *Regents of Univ. of Colo. v. Harbert Constr. Co.*, 51 P.3d 1037 (Colo.App.2001). We review a properly preserved objection to a jury instruction for harmless error. *Woznicki v. Musick*, 119 P.3d 567 (Colo.App.2005). Such an error is harmless unless it affects the substantial rights of the parties. C.R.C.P. 61. Prejudicial error in an instruction exists if the record shows that the jury might have reached a different verdict with a correct instruction. *Woznicki v. Musick, supra.*

■ Statutory interpretation is a question of law that we review de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654 (Colo.2000).

■ Courts have a fundamental responsibility to interpret statutes to effect the General Assembly's intent, giving the words in the statute their plain and ordinary meaning. *Golden Animal Hosp. v. Horton*, 897 P.2d 833 (Colo.1995). But courts also presume that the legislature intended a just and reasonable result. Section 2–4–201(1)(c), C.R.S.2005. Hence, courts will not interpret a statute in a manner that leads to an absurd or unreasonable result. *See, e.g., People v. Riggs*, 87 P.3d 109 (Colo.2004); *In re Marriage of Roosa*, 89 P.3d 524 (Colo.App.2004).

■ When interpreting a statute, a reviewing court may substitute "or" for "and," or vice versa, to avoid an absurd or unreasonable result. *See, e.g., Henrie v. Greenlees*, 71 Colo. 528, 208 P. 468 (1922); *see also Smith v. Colo. Dep't of Human Servs.*, 916 P.2d 1199 (Colo.App.1996); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo.App.1988);

N. Singer, *Statutes and Statutory Construction* § 21:14, at 188 (6th ed. 2002)("Where the word 'and' is used inadvertently and the intent or purpose of the statute seems clearly to require the word 'or,' this is an example of a drafting error which may properly be rectified by a judicial construction.").

The General Assembly enacted the EAS, as relevant here, to encourage equine activities by limiting the civil liability of equine professionals involved in and sponsors of such activities. Section 13–21–119(1), C.R.S. 2005. The statute provides a nonexhaustive list of "inherent risks of equine activities." Section, 13–21–119(2)(f), C.R.S.2005. It then precludes liability of professionals and sponsors for injuries arising out of these risks. Section 13–21–119(3), C.R.S.2005.

Yet the EAS does not create absolute immunity. The statutory exception to this immunity at issue provides:

> Nothing in subsection (3) of this section shall prevent or limit the liability of ... any ... person if the ... person ... [p]rovided the animal *and* failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability.

Section 13–21–119(4)(b)(I)(B), C.R.S.2005 (emphasis supplied).

Here, the parties tried their case on the theory that defendants' liability depended upon whether Badger and the horse roundup were appropriate for plaintiff's ability, not whether defendants had made "reasonable and prudent efforts to determine" those abilities. In summation, plaintiff argued that she had been "honest and forthright" with defendants concerning her limited riding experience. Defendants argued that plaintiff had "represented herself to be a good rider."

The disputed jury instruction stated that for plaintiff to recover from defendants, the jury "must find that all of the following three statements have been proved":

> (1) the plaintiff had injuries, damages, and losses; and (2) the defendants: (a) provided the animal to the plaintiff; *and* (b)

failed to make reasonable and prudent efforts to determine the ability of the plaintiff to engage safely in the equine activity; *and* (c) failed to determine the ability of the plaintiff to safely manage the particular animal based on the participant's representations of her ability; and (3) the defendants' failure to make reasonable and prudent efforts to determine the ability of the plaintiff to engage safely in the equine activity and determine the ability of plaintiff to safely manage the particular animal based on the participant's representations of her ability was a cause of the plaintiff's injuries, damages, and losses.

(Emphasis supplied.)

In challenging this instruction, plaintiff argues that (1) the EAS unambiguously imposes a two-pronged duty upon a person who provides a horse to a participant in an equine activity; (2) the statutory construction adopted by the trial court would lead to unjust and illogical results; and (3) plaintiff's proffered construction of the EAS is consistent with other legal authority. We are persuaded by plaintiff's first and second arguments, and therefore do not address her third argument.

Plaintiff's expert opined that Badger was not an appropriate horse for her ability because Badger had been trained in team penning, a competitive activity, and as a result would not respond to commands in the manner expected by an inexperienced rider. This expert also opined that rounding up horses—unlike rounding up cattle—was not an appropriate activity for plaintiff because any horse being ridden near loose horses would run toward them as a result of its herd instinct. The expert concluded:

> So if you have a horse that has these abilities, even has the limited training for team penning, and you have a rider of limited ability, and you put them in a situation where things could get hot, I think it's a recipe for real disaster ....

Defendants presented evidence that plaintiff was a rider of greater experience, that Badger was a regular ranch horse, and that the roundup of these particular loose horses posed no unusual risk because Badger had spent the winter with them. They emphasized that plaintiff had ridden Badger successfully in the morning, that plaintiff had no memory of what, exactly, caused her to fall from Badger, and that she was found lying next to a deep rut in which Badger could have stumbled.

On this evidence and under the challenged instruction, the jury could have decided against plaintiff by concluding that she had not proved both an unsafe horse and an inappropriate activity for her ability. Such a decision is more likely because plaintiff's expert challenged the safety of the horse as well as of the activity. And this instruction forced plaintiff to argue in summation that she had proved both.

Nevertheless, plaintiff presented sufficient evidence for the jury to have concluded that (1) she told defendants of her limited riding experience; (2) either the horse, given Badger's competitive training, or the activity, the horse roundup, was inappropriate in light of her limited experience; and (3) either the horse or the activity could have proximately caused the accident.

Under these circumstances, interpreting the EAS to require that a participant must prove that the equine professional or sponsor failed to inquire into *both* managing a horse *and* engaging in an activity would lead to the absurd or unreasonable result that the professional or sponsor would be immune from liability for injury caused by a risk legislatively determined to be outside the "inherent risks of equine activity."

In rejecting this interpretation, we first note that the EAS creates only qualified immunity for professionals and sponsors who engage in "equine activity." The statute defines this term very broadly, and as here relevant "equine activity" includes "[r]ides, trips, hunts ... of any type however informal or impromptu." Section 13–21–119(2)(c)(V), C.R.S.2005.

But the exception before us, as well as the exception in § 13–21–119(4)(b)(I)(A), C.R.S.2005 (injury resulting from knowingly providing defective equipment), also involves "equine activity" in which sponsors and professionals engage. Thus, in our view the

legislature intended both to establish a broad zone of immunity from common law liability—"inherent risks of equine activity"—and to identify a few specific risks, likewise involving equine activity, where sponsors and professionals would still be subject to common law liability because such risks are not "inherent."

Forfeiting immunity under this exception for failure to inquire into a participant's ability indicates that risks arising from a mismatch of horse or activity to the participant are not "inherent." Section 13–21–119(4)(b), C.R.S.2005 ("[n]othing in subsection (3) . . . shall prevent or limit the liability of" a sponsor or professional if the sponsor or professional takes or fails to take certain action); cf. *Fielder v. Acad. Riding Stables,* 49 P.3d 349 (Colo.App.2002)(wrangler's failure to remove screaming child from horse before it bolted not "inherent risk of equine activities").

We now turn to a more detailed examination of the language before us, which involves three conditions. First, the professional or sponsor must have provided the horse. This condition narrows the exception because the definitions of "equine professional" and "equine activity sponsor" include persons or entities engaged in many activities other than renting horses, such as teachers and riding clubs. Section 13–21–119(2)(d)–(e), C.R.S.2005.

The second and third conditions, respectively, involve failure to make "reasonable and prudent" inquiry concerning the participant's ability "to engage safely in the equine activity" and "to safely manage the particular animal." Thus, we agree with plaintiff's first argument that these conditions establish a two-part duty of inquiry.

The conjunctive "and" between the first and second conditions limits loss of immunity for failure to make inquiry, as described in the second and third conditions, to a sponsor or professional who provided the horse. It also connects two closely-related events—providing a horse and determining the participant's ability.

The purpose of the next "and"—between the second condition (safely engage in activity) and the third condition (safely manage animal)—is not so clear.

From the perspective of defining the duty of inquiry, this "and"—meaning "both"—likewise connects two closely-related factors: the participant's ability concerning a proposed activity and the participant's ability concerning the horse that the participant will ride in that activity. Use of the conjunctive logically defines the scope of the duty because both selection of the horse and choice of the activity are under the control of the sponsor or professional who provides the horse. And the conjunctive recognizes that the participant's ability will affect both selection of the horse and choice of the activity.

From the perspective of forfeiting statutory immunity for breach of this two-part duty, however, we discern no purpose in using the conjunctive. Failure to inquire into a participant's ability either to manage the horse or to engage in the activity could result in a mismatch to the participant's ability. And risks arising from mismatching either the horse or the activity to the participant's ability could have similar detrimental consequences for the participant. Thus, interpreting the exception as forfeiting immunity only if a sponsor or professional breaches *both* aspects of the inquiry duty would contradict the legislative intent of forfeiting immunity as to *any* risk not "inherent" in "equine activities."

We also note several anomalies in the exception before us. It neither imposes liability for failure to inquire nor requires that failure to inquire have proximately caused injury to the participant. Thus, liability for failure to inquire would presumably be decided on the common law obligation to act with ordinary care. See *Shandy v. Sombrero Ranches, Inc.,* 525 P.2d 487 (Colo.App. 1974)(not published pursuant to C.A.R. 35(f))(recognizing duty of reasonable care to provide horse commensurate with rider's ability). Yet the exception is silent as to the consequences, if any, of providing an inappropriate horse or activity, despite having made a reasonable inquiry. And even if the exception impliedly preserves common law liability in this circumstance, the standard of care would seemingly be defined by the "par-

ticipant's representations," rather than by what a reasonable sponsor or professional should have concluded concerning the participant's ability.

 Moreover, the limited immunity created by the EAS is inconsistent with the common law duties of an equine professional. *Fielder v. Acad. Riding Stables, supra.* A statutory grant of immunity, in derogation of the common law, should be interpreted narrowly, and any exceptions to that immunity, for the protection of injured persons, should be construed broadly. *See, e.g., Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000) (interpreting Colorado Governmental Immunity Act); *Lin v. City of Golden,* 97 P.3d 303 (Colo.App.2004)(same).

For these reasons, we agree with plaintiff's second argument, and conclude that, while the General Assembly created a two-part duty of inquiry, it did not intend that immunity would be forfeited only if a sponsor or professional breached both portions of the duty. Thus, we conclude a sponsor or professional who "provided the animal" remains subject to common law liability if the sponsor or professional fails to inquire into the participant's ability safely either to manage the horse or to engage in the activity. Hence, we further conclude that the trial court's instruction to the contrary was erroneous.

We disagree with defendants' assertion that "in almost any imaginable case, a safe activity and [a] safe horse are intertwined." For example, an equine activity sponsor could ascertain from a participant's representations that the participant had very limited riding experience and satisfy the "safely manage" inquiry duty by assigning a docile, sure-footed horse to the participant. But suppose the sponsor then took the participant on an advanced activity, such as a narrow trail along the edge of a cliff, during which the participant lost his or her balance, fell from the horse, and slipped over the precipice.

The latter decision would be contrary to the "engage safely" inquiry duty under the statute. Yet under the trial court's interpretation, because the horse was appropriate for the participant's experience, the trier of fact would have to decide in favor of the sponsor.

This result would obtain although the sponsor proximately caused the injury by choosing an inappropriate activity and the participant was blameless.

To the extent that in some cases a safe horse and a safe activity may be intertwined, the resolution would not be to require the jury to find breach of both aspects of the duty to inquire. Rather, in such a case the defendant could argue that one failure to inquire did not proximately cause injury to the participant.

Accordingly, we further conclude that the jury instruction was improper and constitutes reversible error.

## II.

Having so concluded, we need not address plaintiff's contention that the trial court abused its discretion by precluding her from calling a rebuttal witness offered to contradict surprise testimony of a former defendant.

Judgment reversed and case remanded for a new trial.

Judge PICCONE concurs.

Judge MARQUEZ dissents.

Judge MARQUEZ dissenting.

Because I conclude the jury was properly instructed, I respectfully dissent.

It is within the sound discretion of the trial court to determine the form and style in which instructions will be given to the jury. *Williams v. Chrysler Ins. Co.,* 928 P.2d 1375, 1377 (Colo.App.1996).

However, the interpretation of a statute is a question of law that an appellate court reviews de novo. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654 (Colo.2000).

In construing statutes, our primary duty is to give full effect to the intent of the General Assembly. Accordingly, we start with the plain language of the statute. "[I]f courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assem-

bly meant what it clearly said." *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1218–19 (Colo.2002)). Courts must construe the statute as a whole in order to give consistent, harmonious, and sensible effect to all its parts. *Carlson v. Ferris,* 85 P.3d 504, 508 (Colo.2003).

In enacting the Equine Activities Statute (EAS), the General Assembly expressly stated:

The general assembly recognizes that persons who participate in equine activities ... may incur injuries as a result of the risks involved in such activities. The general assembly also finds that the state and its citizens derive numerous economic and personal benefits from such activities. It is, therefore, the intent of the general assembly to encourage equine activities ... by limiting the civil liability of those involved in such activities.

Section 13–21–119(1), C.R.S.2005.

Under the statute, "inherent risks of equine activities" include a number of things, but are not limited to: "(I) The propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them; [and] (II) The unpredictability of the animal's reaction to such things such as sounds, sudden movement, and unfamiliar objects, persons, or other animals." Section 13–21–119(2)(f), C.R.S.2005.

To encourage equine activities, the EAS provides, "an equine activity sponsor ... shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities." Section 13–21–119(3), C.R.S.2005. Section 13–21–119(4), C.R.S.2005, then carves out certain exceptions to this broad grant of immunity. Thus, the EAS provides immunity to an equine activity sponsor unless that sponsor's conduct falls within the legislatively prescribed exceptions.

The portion of the statute at issue here reads as follows:

Nothing in subsection (3) of this section shall prevent or limit the liability of ... any ... person if the ... person ... [p]rovided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability.

Section 13–21–119(4)(b)(I)(B), C.R.S.2005 (emphasis added).

Here, as the majority notes, the jury instruction stated that for plaintiff to recover from defendants, the jury "must find that all of the following three statements have been proved":

(1) the plaintiff had injuries, damages, and losses; and (2) the defendants: (a) provided the animal to the plaintiff; and (b) failed to make reasonable and prudent efforts to determine the ability of the plaintiff to engage safely in the equine activity; and (c) failed to determine the ability of the plaintiff to safely manage the particular animal based on the participant's representations of her ability; and (3) the defendants' failure to make reasonable and prudent efforts to determine the ability of the plaintiff to engage safely in the equine activity and determine the ability of plaintiff to safely manage the particular animal based on the participant's representations of her ability was a cause of the plaintiff's injuries, damages, and losses.

Here, plaintiff challenges only the use of the conjunctive "and" in the instruction. She asserts that the plain language of § 13–21–119(4)(b)(I)(B) imposes a two-pronged duty on a person providing a horse to another to ensure both (1) that the participant was matched with a proper horse and (2) that the rider was placed in an appropriate activity for his or her abilities. According to plaintiff, a failure to do one or the other gives rise to liability. I disagree and conclude that the plain language of the statute supports the jury instruction given.

Defendants presented extensive evidence regarding their observations of plaintiff's abilities, Badger, and the day's events, and they specifically argued for the instruction given. In my view, § 13–21–119(4)(b)(I)(B) plainly states that nothing prevents or limits

liability of a person if that person failed "to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the particular animal" (emphasis added).

That the General Assembly meant "and" in this subsection is supported by comparison to other exceptions under § 13–21–119(4). Other exceptions to immunity under the EAS contain "subexceptions" that are joined by the use of the word "or." For example, § 13–21–119(4)(b)(I) provides that nothing prevents or limits liability of a person if that person

(A) Provided the equipment or tack, and knew or should have known that the equipment or tack was faulty ... *or*

(B) Provided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... and determine the ability of the participant to safely manage the particular animal.

(Emphasis added.) Therefore, the language of the statute and the plain and ordinary meaning of the words compel me to reject plaintiff's proffered interpretation.

Further, the jury instruction correctly tracks the language of the statute. *See People v. Jacobs*, 91 P.3d 438 (Colo.App.2003)(an elemental jury instruction tracking the language of the applicable statute is almost always sufficient).

The majority is persuaded by plaintiff's argument that the statutory construction adopted by the trial court would lead to unjust and illogical results. The majority suggests that the failure to inquire into the participant's ability to engage safely in the equine activity and the failure to inquire into the participant's ability to manage the particular animal are both outside the inherent risks of equine activity. While the majority focuses on a failure to inquire, the statute states "failed to make reasonable and prudent efforts to determine." The majority then concludes that "or" is properly substituted for "and" in order to avoid an unreasonable result and to give effect to the legislative intent. Because I do not agree that

the plain language of the statute is inconsistent with the intent of the legislature, I respectfully disagree with the majority's analysis.

The General Assembly's use of the word "and," instead of "or," is presumed to be in the conjunctive sense unless the legislative intent is *clearly to the contrary. See, e.g., Armintrout v. People,* 864 P.2d 576, 581 (Colo.1993).

In *Town of Erie v. Eason,* 18 P.3d 1271, 1276 (Colo.2001), the supreme court held:

It is true that when construing a statute, courts must not follow statutory construction that leads to an absurd result.... However, our concern is with the absurdity of the resulting interpretation. We do not generally imagine other possible applications of the interpretation in determining whether the result is absurd. Rather, we consider whether the resulting interpretation is inconsistent with the purposes of the legislation.

*Town of Erie v. Eason, supra,* 18 P.3d at 1276 (citations omitted).

Here, given that the intent of the General Assembly in enacting the EAS was to encourage equine activities by limiting the civil liability of those involved in such activities, *see* § 13–21–119(1), I conclude that the plain language of the statute is consistent with the purposes of the legislation.

While the majority engages in a discussion concerning what are and are not "inherent risks" of equine activities, it is § 13–21–119(4)(b)(I)(B) that defines the conditions of immunity here. Ultimately, it is the legislative intent that governs. *See Town of Erie v. Eason, supra.* To reach its result, the majority must rewrite the statute, and that is not an avenue open to the courts.