Freeman CLYNCKE and Danny
Clyncke, Petitioners.

v.

Michele WANEKA, Respondent.

No. 06SC66.

Supreme Court of Colorado,
En Banc.

Feb. 26, 2007.

As Modified on Denial of Rehearing
May 21, 2007.*

* Justice Rice and Justice Eid would grant the petition; Justice Hobbs does not participate.

Lambdin & Chaney, LLP, L. Kathleen Chaney, John W. Fairless, Denver, Colorado, Attorneys for Petitioners.

Peter William Thomas, PC, Peter W. Thomas, Jr., Snowmass Village, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Judgment and an Opinion.

## I. Introduction

In this appeal, we review and affirm the court of appeals' conclusion in *Waneka v. Clyncke,* 134 P.3d 492 (Colo.App.2005), that the trial court erred when instructing the jury on the potential liability of a sponsor of an equine event under the Colorado Equine Activities Statute, section 13–21–119, C.R.S. (2006). We agree that the Equine Statute places a two-pronged duty on sponsors, holding that a sponsor may be liable when he fails to make reasonable efforts to determine either a participant's ability to engage in the equine activity or a participant's ability to manage a particular horse.

The Equine Statute provides exemption from civil liability[1] for sponsors of equine activities and equine professionals with respect to inherent risks of equine activity. *See* § 13–21–119(3). Subsection (4)(b) of the Equine Statute establishes exceptional circumstances where common law civil liability still may be imposed. At issue in this case is what a plaintiff must prove under subsection 13–21–119(4)(b)(I)(B) to establish that an equine sponsor is not exempt from liability.

The trial court's instruction required Waneka to prove that the Clynkes failed to make reasonable efforts to determine both her ability to engage in an equine activity and her ability to manage a particular animal. This instruction tracked the trial court's interpretation that subsection (4)(b)(I)(B), an exception to the Equine Statute's exemption from liability, requires plaintiffs to prove an equine sponsor's failure to make reasonable efforts to determine both a proper activity and a proper horse for the participant.

The court of appeals disagreed with the trial court's interpretation of the exception to the Equine Statute's grant of exemption from common law liability in subsection (4)(b)(I)(B). *Waneka,* 134 P.3d at 493–94. The court of appeals applied interpretive rules of statutory construction, substituting the word "or" for "and" when interpreting subsection 13–21–119(4)(b)(I)(B). *Id.* at 496–97. The court justified this substitution because it reasoned that the legislature intended to impose a two-pronged duty on sponsors of equine activity and hence, that its substitution of "or" for "and" was necessary to avoid an absurd or unreasonable result. *Id.* Accordingly, the court of appeals held that the trial court's jury instruction was improper and constituted reversible error. *Id.* at 497. The court of appeals' statutory construction holds that a sponsor is subject to common law liability if a plaintiff proves *either* that the sponsor failed to make reasonable efforts

to determine the participant's ability to engage in the activity *or* that the sponsor failed to make reasonable efforts to determine the participant's ability to manage an animal. *Id.* We granted certiorari to review the court of appeals' decision.[2]

We agree with the court of appeals' conclusion that the trial court proffered an erroneous jury instruction constituting reversible error. However, we disagree with its analysis. The court need not employ interpretive rules of statutory construction to resolve this issue. The substitution of "or" for "and" is unnecessary. Instead, the court need only look to the plain language of the statute.

The plain language of subsection 13–21–119(4)(b)(I)(B) places a two-pronged duty on sponsors of equine activity seeking exemption from common law civil liability. Thus, a jury instruction tracking the language of this statute states that sponsors may be held liable if they *either* failed to make reasonable efforts to determine the participant's ability to engage in the activity *or* failed to make reasonable efforts to determine the participant's ability to manage an animal. The trial court's jury instruction requiring that the plaintiff prove a sponsor's failure to perform both duties is erroneous because it does not track the plain language of the statute.

We hold that the trial court committed reversible error when it instructed the jury that Waneka, the plaintiff in the trial court and the respondent before us, had to prove the defendants' failure to make reasonable efforts to determine both a proper activity and proper horse to establish that they were not exempt from liability. Accordingly, we affirm the judgment of the court of appeals employing differing reasoning and return this case to that court with directions to remand this case to the district court for a new trial consistent with this opinion.

---

1. We use the language "exemption from civil liability" because this tracks the statutory language of section 13–21–119, meaning that if the equine activity involves inherent risks then an equine sponsor will not be liable unless his activity falls within one of the four statutory exceptions.

2. We granted certiorari on the issue:

Whether the court of appeals erred in substituting the word "or" in place of the word "and" in the Colorado Equine Activities Statute ("EAS"), thereby greatly expanding the potential liability of those involved in the equine industry despite the stated legislative purpose of the EAS to provide immunity and limit liability in that industry?

## II. Facts and Proceedings Below

Respondent Michele Waneka initiated this lawsuit after falling from a horse that Petitioners Freeman Clyncke and Danny Clyncke provided for her to ride while assisting the Clynckes in a horse roundup on their ranch property.

Prior to trial, the court granted partial summary judgment which established that the equine activity which occurred here satisfies the Equine Statute's definition of "inherent risks of equine activity."[3] Because the Equine Statute provides exemption from civil liability to equine sponsors[4] who engage in equine activity involving inherent risks, Waneka, as the plaintiff, had to prove one of the exceptions to this exemption from civil liability.

At trial, Waneka argued that the Clynckes failed to adequately consider her safety by both providing a horse she could not safely manage and allowing her to participate in a horseback riding activity unsuited to her ability level. Waneka presented evidence to support each contention.[5]

The Clynckes admitted that Waneka had an accident while riding a horse on their property but denied that they failed to consider adequately her safety with regard to the horse she was riding or the equine activity in which she was participating. They also presented evidence contesting Waneka's assertions that they were not exempt from liability.[6]

At the conclusion of the evidence, the trial court instructed the jury on common law negligence.[7] The court's instruction provided that the jury could find the Clynckes liable if Waneka proved that their conduct fell within section (4)(b)(I)(B)'s exception to the Equine Statute's grant of exemption from liability.[8] Hence, included in the instructions was an instruction intended to track the statutory language of one of the exceptions to the exemption from civil liability granted by the Equine Statute found in subsections 13–21–119(4)(b) and (4)(b)(I)(B), which states:

> Nothing in subsection (3) of this section shall prevent or limit the liability of an equine activity sponsor [or] equine professional ... if the equine activity sponsor [or] equine professional ... [p]rovided the animal and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the

---

**3.** Nonetheless, the trial court instructed the jury on the definition of "inherent risks of equine activities." However, the verdict form did not require the jury to make a finding as to this fact.

**4.** Waneka admits that the defendants were sponsors of equestrian events as defined by the Equine Statute.

**5.** This evidence included an expert's opinion that the horse was not appropriate for Waneka's ability because the horse would not respond to commands in the manner expected; and that rounding up horses was not an appropriate activity because a horse ridden near loose horses tries to join those horses.

**6.** The Clynckes cross-examined Waneka regarding her previous riding experience at which time she admitted that she had ridden several times. Further, she admitted that she had ridden the same horse in a cattle roundup the morning of her accident. They also presented testimony that rounding up horses was not a dangerous activity and that the only difference between horse roundups and cattle roundups was that horse roundups may be a little faster.

**7.** We do not address whether the trial court's interpretation included a proper statement of an equine sponsor's duty of care. Instead we limit our analysis in this case to the determination of what a plaintiff must prove under subsection (4)(b)(I)(B) in order to prove that the defendants' conduct fell within an exception to the Equine Statute's grant of exemption from civil liability.

**8.** The disputed jury instruction stated that the jury must find "that all of the following have been proved by a preponderance of the evidence: (1) the plaintiff had injuries, damages, and losses, and (2) the defendants (a) provided the animal to the plaintiff; and (b) failed to make reasonable and prudent efforts to determine the ability of the plaintiff to engage safely in the equine activity; and (c) failed to determine the ability of the plaintiff to safely manage the particular animal based on the participant's representations of her ability as required by Colorado's Equine Activity Act; and (3) the defendants' failure to make reasonable and prudent efforts to determine the ability of the plaintiff to safely manage the particular animal based on the participant's representations of her ability was a cause of the plaintiff's injuries, damages, and losses."

particular animal based on the participant's representations of his ability.

*Id.* (emphasis added). The trial court's instruction required Waneka, the plaintiff, to prove three things with regard to the defendants' behavior to establish that they were not exempt from liability. First, she had to prove the defendants provided the horse. Second, she had to prove that the defendants failed to make reasonable and prudent efforts to determine her ability to engage safely in the equine activity; *and* third, she had to prove that the defendants failed to make reasonable and prudent efforts to determine her ability to safely manage the particular animal based on her representations.

Waneka objected, arguing the instruction was erroneous because it did not track the requirements of the statute. She argued that the Equine Statute does not place the burden on the plaintiff to prove that the defendants failed to make reasonable efforts to determine both that the plaintiff could engage safely in the equine activity and that the plaintiff could safely manage the particular animal. Rather she claimed that the statute provides that the defendants are not exempt from liability if the plaintiff proves either occurred—that is, that the Clynckes failed to make a reasonable effort to determine a proper activity or failed to make a reasonable effort to determine a proper horse for her.

The trial court rejected her argument, stating that the legislature would have used the word "or" had it intended there to have been alternative means for establishing that defendants are not exempt from civil liability. The court reasoned that the presence of the word "and" in the statute between the reference to activity and horse meant the legislature intended to require proof of both to establish that the equine sponsor was not exempt from liability. The court further stated that "if the legislature intended to

have a different exception putting the word 'or' in there, they would have listed it as a separate subsection of the statute, just like they have all the other exceptions listed, A, B, C, D, and this was combined in one exception" and "the word 'and' means and." Hence, concluding that a jury instruction containing the conjunctive requirement that the plaintiff have proven both elements to establish potential liability tracked the statute, the court instructed the jury accordingly. The jury found the Clynckes not liable.

Waneka appealed, asserting that the trial court misconstrued the Equine Statute by instructing the jury that she had to prove that the Clynckes failed to make reasonable efforts to determine both her ability to engage in the particular activity and to manage the particular horse to establish that they were not exempt from liability. The court of appeals agreed. It applied interpretive tools of statutory interpretation, concluding that it must substitute the word "or" for "and" in subsection 13–21–119(4)(b)(I)(B) between the clauses referring to activity and horse. *Waneka*, 134 P.3d at 496–97. That court reasoned that the Equine Statute unambiguously imposed a two-pronged duty upon a person who provides a horse to a participant in an equine activity and that the trial court's interpretation of the statute and resulting jury instruction invited an unjust and illogical result.[9] *Id.* Accordingly, the court of appeals concluded that the jury instruction was improper and constituted reversible error and remanded the case for a new trial. *Id.* at 497.

We granted certiorari on the question of whether the court of appeals erred in substituting the word "or" in the place of the word "and" in this statute.

### III. Analysis

▮▮▮▮ Statutory interpretation is a question of law that we review de novo. *Ryals v.*

---

9. As an example of an unjust and illogical result created by the trial court's interpretation, the court of appeals gave this example:

[A]n equine activity sponsor could ascertain from a participant's representations that the participant had very limited riding experience and satisfy the "safely manage" inquiry duty by assigning a docile, surefooted horse to the

participant. But suppose the sponsor then took the participant on an advanced activity, such as a narrow trail along the edge of a cliff, during which the participant lost his or her balance, fell from the horse, and slipped over the precipice.

*Id.* at 497.

*St. Mary–Corwin Reg'l Med. Ctr.*, 10 P.3d 654, 659 (Colo.2000). When interpreting a statute, it is our primary goal to give effect to the legislative intent. *Golden Animal Hosp. v. Horton*, 897 P.2d 833, 836 (Colo. 1995). To determine legislative intent, we look first to the statutory language itself. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005). Whenever possible, we determine the legislative intent by reviewing the plain and ordinary meaning of the words. *Horton*, 897 P.2d at 836. If this language is plain and clear, there is no need to use interpretive rules. *Vaughan v. McMinn*, 945 P.2d 404, 408 (Colo.1997). Instead, the statute is to be applied as written since it is presumed that the General Assembly meant what it said. *Upper Gunnison River Water Conservancy Dist.*, 109 P.3d at 593.

■ The General Assembly enacted the Equine Statute to grant exemption from civil liability to persons involved in equine activities for injuries that result from certain inherent risks of those activities because the state and its citizens derive economic and personal benefits from equine activities. *See* §§ 13–21–119(1), (4). Other than imposing a general requirement to give notice of the inherent risks to be assumed by a participant, the Equine Statute does not create additional duties for individuals involved in equine activities. *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 468 (Colo. 2004).

By granting an exemption to civil liability in certain circumstances, this statute abrogates the former duties of the equine professional under common law. *Shandy v. Sombrero Ranches, Inc.*, 525 P.2d 487 (Colo.App. 1974) (discussing common law duties of a wrangler when a rider is unable to control a horse). For this reason, we apply strict construction to that grant of limited immunity. *See Walton v. State*, 968 P.2d 636, 643 (Colo. 1998) (stating that because governmental immunity derogates Colorado's common law,

the immunity provisions are subject to strict construction). When equine professionals are not exempt from liability under the Equine Statute, they are subject to common law liability. See *Chadwick*, 100 P.3d at 468.

■ The Clynckes argue that the court of appeals erred when it substituted "or" for "and" in subsection 13–21–119(4)(b)(I)(B). They argue that this substitution is problematic because it substantially lessens Waneka's burden of proof, undermining the purpose of the Equine Statute to limit civil liability. They urge the court to review the plain language of the statute.

We agree that the court of appeals erred when it stated it was necessary to alter the statutory language of subsection (4)(b)(I)(B). To reach this conclusion, we need not address the policy arguments of either party or the court of appeals. Instead, we turn to the plain language of the statute.

■ Subsection (3) of the Equine Statute grants exemption from civil liability to equine sponsors. *See* § 13–21–119(3).[10] However, this exemption from civil liability is not unlimited. The Equine Statute only grants exemption from civil liability for "inherent risks of equine activity." *Fielder v. Academy Riding Stables*, 49 P.3d 349, 351–52 (Colo.App. 2002). A defendant must prove that the plaintiff's injuries resulted from inherent risks of equine activity to receive exemption from civil liability. *See id.* Here, the trial court relieved defendants of that burden by granting partial summary judgment on this issue prior to trial. Hence, at trial, the defendants were presumed exempt from civil liability unless Waneka proved that their behavior fell within one of the Equine Statute's exceptions.

Part of the statute, subsection (4)(b), provides four specific exceptions to this exemption from civil liability. *See* § 13–21–119(4)(b). The language introducing these specific exceptions states:

10. Except as provided in subsection (4) of this section, an equine activity sponsor, an equine professional, a llama activity sponsor, a llama professional, a doctor of veterinary medicine, or any other person, which shall include a

corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from inherent risks of equine activities.
§ 13–21–119(3).

Nothing in subsection (3) of this section shall prevent or limit the liability of an equine activity sponsor ... if the equine activity sponsor ...

§ 13–21–119(4)(b).

The introductory statement "[n]othing in subsection (3) shall prevent or limit the liability of an equine sponsor" indicates that the exemption from civil liability provided by subsection (3) does not apply to those four articulated circumstances set forth by subsection (4)(b). Subsection (4)(b) provides specific exceptions to the exemption from civil liability provided by subsection (3), or in other words, if any of those four circumstances occur, then the sponsor may be liable under the common law and not exempt from civil liability. We paraphrase the meaning of this phrase "nothing in subsection (3) shall prevent or limit the liability of an equine sponsor" to mean in effect that an equine sponsor is not exempt from liability if any of the specified conditions are present.[11]

Turning to the subsection 4(b), which we must construe in this case (that is, subsection (4)(b)(I)(B)), we note that this exception must be read in conjunction with the introductory phrase of subsection (4)(b) which provides that an equine sponsor who provides the animal is not exempt from civil liability if the equine sponsor:

> failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability.

§ 13–21–119(4)(b)(I)(B) (emphasis added). For ease of discussion we simplify the legislative phrasing by using a shortcut for this circumstance—that a sponsor is not exempt from civil liability, or may be liable, if he "failed to do X *and* Y." The phrase "failed to do" modifies both X and Y. Hence, the statute means that a sponsor is not exempt from civil liability if he "failed to do X and failed to do Y." Stated in the affirmative, the sponsor is exempt from civil liability unless a different exception applies if he did X and Y. Hence, if the equine sponsor satisfies both prongs of the exception, he will not be exposed to potential liability under subsection (4)(b)(I)(B) because the exception does not apply, and he retains the exemption from civil liability under subsection (3) of the Equine Statute unless a different exception applies.

The Clynckes argue that Waneka, the plaintiff, had to prove that they failed to do X *and* Y to establish that they were not exempt from liability as the trial court so instructed and not either X *or* Y.[12] This construction does not comport with the directive of this statute. If the plaintiff proves that a defendant failed to do X *or* Y, the exception to the exemption from civil liability applies and the sponsor may be liable.

Hence, our statutory analysis reveals that the statute means "and" where this word is used and the court of appeals erred when it replaced "and" with "or." Nonetheless, we agree with the court of appeals' ultimate conclusion that the trial court erred when it proffered a jury instruction that did not track the statutory language's two-pronged duty that exemption from civil liability requires the sponsor to do X *and* Y—that is to "make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... and [to] determine the ability of the participant to safely manage the particular animal based on the participant's representation of his ability." § 13–21–119(4)(b)(I)(B).

■ For a jury instruction to track statutory language, it does not have to be an exact duplicate of that language. The purpose of jury instructions is to provide the jury with the applicable law so that its attention will be directed to the specific issues

---

11. We note that the Clynckes admit that this construction is accurate when in their briefing they state, "[b]y stating that 'nothing in subsection (3) of this section shall prevent or limit the liability,' the General Assembly has plainly stated that it is the immunity from liability that is prevented or limited."

12. There is no dispute that a plaintiff must prove that the equine sponsors provided the horse to eliminate immunity. Further, there is no dispute that the Clynckes provided the horse in this case.

that are to be determined. *Yampa Valley Elec. Ass'n, Inc. v. Telecky*, 862 P.2d 252, 256 (Colo.1993). These instructions must contain a correct statement of the law so that jurors may properly examine the case before them. *Id.* In this case, the correct statement of the law provided in subsection 13–21–119(4)(b)(I)(B) involves instruction regarding the sponsor's two-pronged duty.

In terms of the exemption from civil liability, the instruction should read: a defendant is exempt from civil liability if he made reasonable and prudent efforts to determine both the ability of a participant to engage safely in the equine activity and the ability of the participant to safely manage the particular animal based on the participant's representation of his ability. Therefore, the trial court's jury instruction was erroneous because it failed to properly track the statutory language as written.

 Having determined that the trial court erred in giving its instruction to the jury, we must now determine whether that failure constitutes reversible error. *See Jordan v. Bogner*, 844 P.2d 664, 667 (Colo.1993). The court must order a new trial when the result of the trial may have been different if the court had given the proper instruction. *See Webb v. Dessert Seed Co.*, 718 P.2d 1057, 1066–67 (Colo.1986) (requiring a new trial when the result would probably have been different if the court had given the proper instruction); *Mendez v. Pavich*, 159 Colo. 409, 411–412, 412 P.2d 223, 224 (1966) (requiring retrial when an instruction is so erroneous that it would probably lead jury into error).

Here, the record supports the view that the jury might have answered differently on the issue of sponsor liability if a proper instruction had been given. Waneka presented evidence supporting her arguments that the Clynckes failed to make reasonable efforts to determine both a proper activity and a proper horse for her. Hence, we order a new trial with proper instruction.

## IV. Conclusion

Accordingly, we affirm the judgment of the court of appeals but employ different reasoning and return this case to that court with directions to remand the case to the district court for a new trial consistent with this opinion.

Justice MULARKEY concurs.

Justice COATS concurs in the judgment only.

Justice EID dissents, joined by Justice RICE.

Justice HOBBS does not participate.

Justice COATS, concurring in the judgment only.

Although I would also affirm the judgment of the court of appeals, I would not cling to the fiction that the statutory provision at issue here is clear and unambiguous. The word "and" is notoriously ambiguous and has been recognized as such since time immemorial. *See, e.g., United States v. Fisk*, 70 U.S. (3 Wall.) 445, 18 L.Ed. 243 (1865); *see also Heydon's Case*, 76 Eng. Rep. 637 (Ex. 1584). It has been described as having no "single meaning, for chameleonlike, it takes its color from its surroundings." *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958). Depending upon syntax and context, it can have either a conjunctive or disjunctive effect. *See Slodov v. United States*, 436 U.S. 238, 246–47, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In fact, it is often held that use of the word "and" should be understood in its conjunctive sense unless context would render such an interpretation anomalous or absurd. *See, e.g., Reese Bros., Inc. v. United States*, 447 F.3d 229, 235–36 (3d Cir.2006).

Despite the suggestion of the majority to the contrary, nothing in the syntax of the statutory sentence itself mandates a disjunctive interpretation. The second "and" in subsection (4)(b)(I)(B) joins two kinds of provider assessments of the participant's ability. In common parlance, this sentence structure could indicate an intent to treat both as a set, or combination, in effect defining a single duty the failure to satisfy either aspect of which would amount to a failure of the provider to satisfy a statutory condition required for exemption. But it could also be understood, on its face, to express an intent to

strip the provider of its statutory exemption only if the provider behaved so badly as to fail in each of two separate obligations.

Conventional usage makes both understandings reasonable, and therefore the provision must be construed in order to determine its meaning. I find it singularly unhelpful to dub a particular statutory interpretation the statute's "plain meaning," merely because it has been arrived at without resort to extrinsic aids, like legislative history. The fact that a particular provision's meaning can ultimately be determined by examining the greater statutory scheme of which it is a part and applying other intrinsic aids to construction alone does not render it clear and unambiguous or any less the product of statutory construction.

Largely for the reasons articulated by the court of appeals, I would consider anomalous any construction exempting a provider from liability despite its unreasonable failure to provide an appropriate animal for the planned activity, whether that be due more to the nature of the animal or more to the nature of the activity. It is difficult to find a legislative intent to shield providers unless they unreasonably expose their clients to danger in both ways simultaneously. While I acknowledge that the court of appeals' reference to "substitution" of the word "or" for the word "and" follows ancient usage, however, I consider it more accurate to describe the court's action as "construing" the word "and" as intended in its disjunctive sense. *See, e.g., Fisk,* 70 U.S. at 447.

Although I therefore do not join the majority opinion, I nevertheless concur in the judgment of the court.

## Justice EID, dissenting.

The court of appeals acknowledged that, in order to reach the result adopted by the majority today, it would have to change the "and" in the language of section 13–21–119(4)(b)(I)(B), C.R.S. (2006), to an "or," but held that such a change was necessary because of policy considerations. *Waneka v. Clyncke,* 134 P.3d 492, 497 (Colo.App.2005). The majority, by contrast, finds that it can reach the same result without rewriting the statute. Because I believe that a change from "and" to "or" is in fact required to reach the majority's outcome, and because I believe such a change is improper, I respectfully dissent.

The language of the statute states:

[ (4) ] (b) Nothing in subsection (3) of this section shall prevent or limit the liability of an equine activity sponsor . . . if the [sponsor] . . .:

. . .

[ (I) ] (B) Provided the animal *and* failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the [activity] . . . *and* determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability. . . .

§ 13–21–119 (emphasis added). In order to reach the conclusion that a defendant sponsor is not exempt from liability if he either fails to make reasonable and prudent efforts to match the participant to the activity *or* the participant to the animal, the majority recasts the language of subsection (4)(b) and subsection (4)(b)(I)(B) from the negative to the affirmative (that is, from "nothing shall prevent liability" if "the sponsor fails to do X and Y," to "the sponsor is exempt from liability" if "he does X and Y"). In other words, according to the majority, the statute says that "the sponsor is exempt from civil liability . . . if he did X and Y." Maj. op. at 1078. Thus, the majority concludes that the defendant sponsor is exempt from liability under section 13–21–119(4)(b)(I)(B) only by making reasonable and prudent efforts to both match the participant to the activity, and the participant to the animal. *Id.*

Despite its assertions to the contrary, the majority's methodology is difficult to square with any notion of "plain language" statutory interpretation. *Id.* at 1074. The statute as written begins with an exemption from liability in subsection (3) and then withdraws that exemption upon the satisfaction of the elements set forth in subsection (4)(b)(I)(B). By inverting the statutory language, the majority erases the baseline of exemption. Inverting the language changes the statutory

elements into requirements that equine activity sponsors must satisfy completely in order *to achieve exemption,* rather than actions that, if committed by defendants, cause them *to lose exemption.*

The majority also fails to correctly apply its own methodology, because it recasts *only a portion* of the statutory language to the affirmative. The majority focuses exclusively on the "fails to do X and Y" language, but subsection (4)(b)(I)(B) does not begin with "fails to do X and Y"; rather, it starts with "Provided the animal...." Thus, to recast the *entire* provision from negative to affirmative, one would actually have to say "the sponsor is exempt from liability if he *did not* provide the animal and he *did* X and Y." If you recast one portion of the statutory language from negative to affirmative, you have to change all of it. But once you do that, the statutory language no longer makes sense; indeed, the one thing that all the parties agree upon is that the defendant sponsor has to provide the animal. Maj. op. at 1078 n. 12.

The majority's interpretive sleight of hand works only if the "Provided the animal" portion of subsection (4)(b)(I)(B) is ignored. The majority does not consider the "Provided the animal" language in conjunction with its "negative-affirmative" methodology. Instead, it simply refers to a defendant sponsor *"who* provides the animal," and then states that such a sponsor is exempt "if he did X and Y." *Id.* at 1078 (emphasis added). But there is no "who provides the animal" language in subsection (4)(b). In the end, the majority simply rewrites the statutory language to assume away the difficulties with its interpretation.

The majority's interpretation is also incompatible with the overall structure of the statute. There is no dispute that subsection (3) creates a broad exemption from liability for sponsors of equine activities for injuries resulting from the inherent risks of equine activities. Maj. op. at 1077 (citing § 13–21–119(3)). Subsection (4)(b) then states that "Nothing in subsection (3) of this section shall prevent or limit the liability of [the defendant] ... if the [defendant]: ...." The fact that subsection (4)(b) ends with a colon signals that the language that follows will describe situations to which the exemption of subsection (3) does not apply. One such situation is set forth in subsection (4)(b)(I)(B), in which the defendant must have "Provided the animal *and* failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity ... *and* determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability." § 13–21–119(4)(b)(I)(B) (emphasis added).

The majority doesn't take issue with the first "and" as connecting two actions that the defendant must have taken (provided the animal and failed to make reasonable and prudent efforts to match the participant to the activity) for the exemption not to apply. The second "and" serves the same function by connecting the second and third actions a defendant sponsor must take (or fail to take) for the exemption not to apply. Thus, in order for the exemption not to apply under subsection(4)(b)(I)(B), the defendant sponsor must have (1) provided the animal, *and* (2) failed to make reasonable and prudent efforts to match the participant to the activity, *and* (3) failed to make reasonable and prudent efforts to match the participant to the animal. The majority, improperly in my view, changes the second "and" to "or" by holding that the plaintiff need show only (2) *or* (3) for the exemption not to apply. Maj. op. at 1078. The majority therefore has not found "plain language" missed by the court of appeals, as it suggests, *see id.* at 1074, but rather has simply altered the plain meaning by changing the "and" to an "or."

The opinion concurring in the judgment only, by contrast, suggests that there are two reasonable readings of the statute: mine, and one that would interpret the second "and" in subsection (4)(b)(I)(B) as linking two separate parts of a single duty. Conc. op. at 1079–80. Under this latter interpretation, the defendant's failure to perform either part of the duty would mean the defendant failed to perform the single duty in its entirety. The concurring opinion would adopt the "single duty" interpretation, and thus reach the same result as the majority, because it would

be "anomalous" to "shield [defendant sponsors] unless they unreasonably expose their clients to danger in both ways simultaneously." *Id.* at 1080.

While I believe the concurring opinion's interpretation is closer to the mark than the majority's because it attempts to read "and" as "and," ultimately I am not persuaded. There is nothing in the language that would cause the reader to understand that the second "and" links two parts of a single duty. On the contrary, as the majority points out, "[t]he phrase 'failed to [make reasonable and prudent efforts]' modifies both" the phrase "determine the ability of the participant to engage safely in the [activity]" and "determine the ability of the participant to safely manage the particular animal based on the participant's representations of his ability." Maj. op. at 1078.

Nor does there appear to be any background principle in equine law or usage supporting the "single duty" interpretation. On the contrary, the pre-statutory caselaw describes a duty to match the rider to the animal, but says nothing about a duty to match the rider to the activity. *See Shandy v. Sombrero Ranches, Inc.,* 525 P.2d 487 (Colo.App.1974) (not selected for publication). Prior to the statute's adoption, Colorado caselaw recognized that a defendant sponsor could be held liable for the failure to properly match a rider with an appropriate horse. *See id.* Had the legislature wanted to ensure that a defendant sponsor did not receive an exemption from civil liability under such circumstances, it could have simply referenced the failure to match rider with horse in subsection (4)(b)(I)(B). The legislature chose, however, to include additional language about matching the rider to the activity. This is further evidence that the two clauses should be read separately.

Additionally, while the concurring opinion points out that the two clauses are related because they both go to assessing the participant's ability, conc. op. at 1080, they remain two separate assessments. In this case, for

example, the plaintiff presented expert testimony that she did not have the ability to engage in the particular activity (a horse roundup), and furthermore, that she was insufficiently experienced to handle the particular horse provided to her by the Clynckes. *See Waneka,* 134 P.3d at 495; maj. op. at 1075.

Finally, I disagree with the concurring opinion that reading the two clauses as two separate duties, both of which the defendant sponsor must fail for the exemption not to apply, would be "anomalous." In adopting the statute, the General Assembly "recognize[d] that persons who participate in equine activities ... may incur injuries as a result of the risks involved in such activities." § 13–21–119(1). It also found "that the state and its citizens derive numerous economic and personal benefits from such activities." *Id.* Finally, it stated that "[i]t is ... the intent of the general assembly to encourage equine activities ... by limiting the civil liability of those involved in such activities." *Id.* My reading, which requires a defendant sponsor to fail two separate duties before the statutory exemption is lost, is entirely consistent with the purpose of the statute as stated in the statutory language itself.

The General Assembly had a choice of using "and" or "or" when it adopted the language at issue today. Numerous other jurisdictions chose "or" in their statutes;[1] Colorado chose "and." Because I believe that choice has a meaning that we must follow, I would reverse the court of appeals and respectfully dissent from the court's opinion.

I am authorized to state that Justice RICE joins in this dissent.

---

1. These jurisdictions are Florida (Fla.Stat. § 773.03(2)(b) (2006)), Minnesota (Minn.Stat. § 604A.12(3)(1) (2006)), Ohio (Ohio Rev.Code. § 2305.321(B)(2)(b) (2006)), New Mexico (N.M.Stat. § 42–13–4(C)(2) (2006)), North Carolina (N.C.Gen.Stat. § 99E–2(b)(2) (2006)), and Wisconsin (Wis.Stat. § 895.481(3)(b) (2006)).